# Easton National Bank & Trust Company *v.* Union National Bank and Trust Company of Souderton, Appellant.

Argued June 10, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Edward J. Hardiman,* with him *Pearlstine, Salkin, Hardiman and Robinson,* for appellant.

*George C. Corson, Jr.,* and *Wright, Manning & Sagendorph,* submitted a brief for appellee.

OPINION BY CERCONE, J., December 1, 1975:

The instant appeal arises from a judgment, after a jury trial, in favor of Easton National Bank (Easton) against Union National Bank (Union) in the amount of $212,007.45. This amount represents the principal and

interest on a $175,000 promissory note of First Subsidy Corporation (First Subsidy) which Union had agreed, but failed, to purchase from Easton. The facts are as follows:

Sometime in 1969, William Clarke, acting for First Subsidy, approached Frankford Trust Company (Frankford) with a plan which would enable First Subsidy to build a nursing home in Easton, Pennsylvania. In order to do so First Subsidy would need $1.2 million. Frankford was willing to provide this sum if the loan were guaranteed by the Federal Housing Administration (FHA). The FHA agreed to guarantee the loan, but required that First Subsidy also post an investment of $175,000. Not being willing and able to meet that requirement from its own assets, First Subsidy turned to other financial institutions for the $175,000. In August of 1970, it requested that Easton loan the necessary $175,000 to get the project off the ground, and Easton indicated that it might be willing to provide the money if it were adequately secured. Through its Vice President, Charles Beam, Easton contacted Union and questioned why, as the bank in which William Clarke was a substantial depositor and his mother a member of the board, they were not willing to advance the money. The reason was that Union's board had determined to limit its loans to the Souderton area where it was located, so that a large investment in Easton would contravene that policy. Mr. Charles Hoeflich, Union's President, did give William Clarke a strong credit reference and indicated that he might be able to get his board to approve some form of "guarantee" of the loan if Frankford would provide a letter of credit and remit $30,000, in each of six monthly installments from progress payments to be made during construction, to an escrow account for retiring the $175,000 debt. Hence, the financing would be circular and enable First Subsidy to undertake the project without investing any of its own cash.

Finally, in August of 1969, Mr. Beam of Easton received the following letter from Mr. Hoeflich of Union, hand delivered by William Clarke:

"Gentlemen:

Effective as of September 1, 1970 and terminating not later than September 30, 1970, the Union National Bank and Trust Company of Souderton hereby agrees to purchase from you a loan on your books in the amount of $175,000 to First Subsidy Corporation, a Pennsylvania corporation.

Should settlement for this project take place before that date, this bank reserves the right to anticipate the note with funds held in escrow in Souderton."

Upon the strength of this letter Easton approved the loan in return for a note from First Subsidy, payable upon demand, in the amount of $175,000 at ten per cent interest per annum.

The project of building the nursing home floundered, for reasons not herein relevant, and in August, 1970, Union requested an extension of one year to purchase the note—apparently Union had not received the progress payment installments they had expected from Frankford. However, Easton would consent to only a six month extension. In March, when the extension had expired and the $175,000 from Union was due, Union refused to honor its obligation. Hence, the instant lawsuit.

Union, the appellant herein, challenges the charge of the lower court insofar as it refused to include a variety of appellant's suggested points—many of which were so technical as to be more confusing than enlightening. "The primary duty of a trial judge in charging the jury is to clarify the issues so that the jury may comprehend the questions that they are to decide." *Acquaviva v. Hartman*, 203 Pa. Superior Ct. 505, 510 (1964). See also *Smith v. Clark*, 411 Pa. 142 (1963). However, appellant's suggested points for charge contained numerous technical references to the Code of Federal Regulations, the

National Banking Act, rulings of the Comptroller General, and "Type I Securities," for example, and were laced with various words of art which would have required considerable elaboration by the court to be meaningful to a panel of laymen. See 75 Am. Jur. 2d, Trials § 701. More importantly, however, most of the suggested points for charge were based upon an interpretation of the law which was inapplicable to the facts of this case.

Principally, Union argues that its agreement with Easton constituted a guarantee of the debt of First Subsidy on a transaction in which Union did not have a substantial interest, so that the guarantee was a violation of the rules and regulations of the Comptroller of the Currency of the United States, promulgated pursuant to the authority vested in him by the National Banking Act.[1] Such transactions, Union argues, are ultra vires and, therefore, void. See, e.g., *C. E. Healey & Son v. Stewardson Nat'l Bank*, 1 N.E. 2d 858 (Ill. 1936), and the cases cited therein. In particular appellant relies upon Ruling 7010[2] which provides:

"A national bank may lend its credit, bind itself as a surety to indemnify another, or otherwise become a guarantor if it has a substantial interest in the performance of the transaction involved or has a segregated deposit sufficient in an amount to cover the bank's total potential liability. For example, a bank, as a fiduciary, has a sufficient interest in the faithful performance by its cofiduciary of his duties to act as surety on the bond of such cofiduciary."

However, as the lower court concluded in its excellent opinion, the agreement between Easton and Union did not constitute a guarantee of the promissory note of First Subsidy, so that the above quoted Ruling was inapposite.

---

1. 12 U.S.C. §1 *et seq.*

2. 12 C.F.R., Chap. 1, §7-7010 (1975).

The transaction arranged between the banks orally, and reduced to writing in the letter of August 29, 1969, required that Union purchase the note from Easton sometime during September, 1970. Union did not state that it guaranteed either payment or collection of the principal and interest. Thus, if Easton had attempted to call the note prior to September, 1970, and First Subsidy were unable to redeem it, Easton would not be able to look to Union for payment simply because of the default. Rather, Easton would have had to hold the note until September, 1970, and then make a demand upon Union for payment pursuant to the *contract* for its purchase. On the other hand, assuming First Subsidy had not defaulted and had made the ten per cent interest payments to Easton when due, Union would have been purchasing a valuable asset. Indeed, the agreed upon interest rate on that note was one and one-half per cent *greater* than the prime interest rate in that locality at that time.

Thus, although from Easton's point of view the note, coupled with Union's promise to purchase it, carried many of the incidents of a guarantee, it differed from a guarantee because it did not constitute a promise to answer for the payment of some debt, or the performance of some obligation, *in case of the default of another person*, who was primarily liable on the note. See *Border Nat'l Bank v. American Nat'l Bank*, 282 F. 73, cert. denied, 260 U.S. 701 (1922). In other words, no action by Easton could be brought against Union on the note, except the action based on Union's promise to purchase the note. And, Union was obliged to purchase the note whether or not First Subsidy defaulted.

Of course, one of the principal functions of a bank is the purchase and sale of commercial paper. Thus, under a bank's power to deal in commercial paper, a bank is empowered to purchase notes absent any restriction in its charter. 4 Michie on Banks and Banking, Ch.

7, § 38 (Rev. ed. 1971). It follows that the power to purchase notes also includes the power to contract for their purchase. Hence, since Union points to no restriction in its charter prohibiting the purchase of promissory notes of any character, Union's agreement to purchase the note in the instant case was not ultra vires. Because the evidence did not support the theories espoused by Union, the court properly refused to instruct the jury on Union's suggested points for charge. See generally 75 Am. Jur. 2d, Trials § 646.[3]

Judgment is affirmed.

---

3. Appellant's other allegations of error, including the question of whether Union had a substantial interest in the Easton-First Subsidy transaction, are either implicitly resolved herein or do not merit discussion. Also, because of our resolution of this case on the merits, we need not reach the question of whether appellant validly preserved these issues for appeal by failing to specifically raise them in its post-trial motions.