580 A.2d 1341

Concepcion L. RIVERA, Administratrix of the Estate of
Frederick L. Rivera, Deceased,

v.

The PHILADELPHIA THEOLOGICAL SEMINARY OF ST.
CHARLES BORROMEO, INC. a/k/a St. Charles Seminary
and Our Lady of Lourdes Catholic Church.

Appeal of the PHILADELPHIA THEOLOGICAL SEMINARY
OF ST. CHARLES BORROMEO, INC. a/k/a St.
Charles Seminary.

Superior Court of Pennsylvania.

Argued Jan. 23, 1990.

Filed Aug. 30, 1990.

Reargument Denied Oct. 15, 1990.

Joseph T. Bodell, Jr., Philadelphia, for appellant.

Jeffrey M. Stopford, Media, for Rivera, appellee.

Alan R. Kutner and Glenn F. Rosenblum, Korn, Kline & Kutner, P.C., Philadelphia, for Our Lady, appellee.

Before CIRILLO, President Judge, and WIEAND and BROSKY, JJ.

WIEAND, Judge:

Frederick L. Rivera, age 12, drowned on December 17, 1976, in a pool owned by The Philadelphia Theological Seminary of St. Charles Borromeo, Inc. (the Seminary) while swimming with a group of altar boys from Our Lady of Lourdes Catholic Church (the Church). His mother, Concepcion L. Rivera, who was also the administratrix of his estate, instituted wrongful death and survival actions to recover damages for his death. On May 4, 1981, a jury attributed causal fault as follows: the Church—65%; the Seminary—30%; and the decedent—5%. On appeal, the Superior Court reversed and remanded for a new trial generally. See: *Rivera v. Philadelphia Theological Seminary*, 326 Pa.Super. 509, 474 A.2d 605 (1984). The Supreme Court, however, modified the award of a new trial by limiting the new trial to the "Seminary's proportionate liability, if any, in the damage judgment Common Pleas has entered on the jury verdict for plaintiff and the Seminary's right to indemnity from the Church for any payment it may be required to make." *Rivera v. Philadelphia Theological Seminary*, 510 Pa. 1, 26, 507 A.2d 1, 14 (1986). The judgment as to the amount of damages was affirmed and reinstated. Thus, upon retrial, the Seminary's liability could not exceed 31.6 percent of the amount of damages

awarded in the first trial (30% divided by the 95% causal negligence of both defendants). As to the new trial between the Church and the Seminary, the Court said, the Church "will have the burden of proving the Seminary's causal negligence, if any. The plaintiff may participate in the new trial if she so chooses to protect any interest she may have in preserving her right to collect her judgment from the Seminary."

Following a second trial in 1988, a jury again found the Seminary guilty of causal negligence in the death of Frederick Rivera and determined its portion of the fault to be in excess of the fault found by the first jury. In accordance with the Supreme Court's direction, however, the trial court molded the verdict according to the Seminary's degree of fault as found in the first trial. The trial court denied post-trial motions and added damages for delay.

On appeal, the Seminary argues that the evidence failed to show that it had breached a duty owed to the decedent or that any act or failure to act on its part had contributed causally to his death. It also contends that it is entitled to a new trial because of errors occurring during the trial. These alleged errors include: (1) an improper instruction regarding the duty of care owed by the Seminary; (2) excessive participation in the trial by the plaintiff-administratrix; and (3) improper remarks by plaintiff's counsel during closing argument to the jury. Finally, the Seminary argues that the trial court erred in molding the verdict and in calculating delay damages.

When the evidence is considered in the light most favorable to the verdict winner, as we are required to do, see: *Mancini v. Morrow*, 312 Pa.Super. 192, 197, 458 A.2d 580, 582 (1983), it is clear that it was sufficient to support the jury's finding that the Seminary had breached a duty owed to the minor decedent. The Seminary, as owner of the pool, had a duty to exercise those precautions which a reasonably prudent owner would have taken to prevent injury to those persons whom it knew or should have known were using its pool. *Rivera v. Philadelphia Theological*

*Seminary,* 510 Pa. 1, 18–19, 507 A.2d 1, 9–10 (1986). Whether the Seminary breached this duty and whether its negligence, if any, was a substantial factor in causing the decedent's death were issues for the jury. The jury's determination can be set aside only if it is clear as a matter of law that reasonable minds could not differ. *Alumni Association of Delta Zeta Zeta of Lambda Chi Alpha Fraternity v. Sullivan,* 369 Pa.Super. 596, 602, 535 A.2d 1095, 1098 (1987); *Vernon v. Stash,* 367 Pa.Super. 36, 46, 532 A.2d 441, 446 (1987). Here, the Seminary's alleged freedom from fault was not clear. A jury could have found, in view of the evidence, that the Seminary knew or should have known that its pool was being used by children and that it failed to exercise reasonable care to prevent injury to them.

■ The trial court did not err when it refused to charge the jury, as requested by the Seminary, that it had no duty to provide a lifeguard. The issue, rather, was whether the Seminary had exercised reasonable care to prevent injury to persons whom it knew or should have known to be using the pool.

> The primary duty of a trial judge in charging the jury is to clarify the issues so that the jury may comprehend the questions that they are to decide. *Easton Nat. Bank & Trust Co. v. Union Nat. Bank & Trust Co. of Souderton,* 237 Pa.Super. 316, 352 A.2d 544 (1975). As long as the trial judge chooses a form of expression which adequately and clearly covers the subject, the judge is not required to use the exact language of a requested point. *McGowan v. Devonshire Hall Apartments,* 278 Pa.Super. 229, 420 A.2d 514 (1980).

*Brandimarti v. Caterpillar Tractor Co.,* 364 Pa.Super. 26, 29, 527 A.2d 134, 136 *allocatur denied,* 517 Pa. 629, 539 A.2d 810 (1987). Instantly, the trial court properly instructed the jury on common law principles of negligence.[1] It was for the jury to determine whether the Seminary had

1. The trial court charged the jury as follows:
   In determining whether the Seminary was negligent in this case, you may exercise some or all of the following questions ...

been negligent in failing to take reasonable precautions to prevent access to its pool when a competent lifeguard was not present and whether the Seminary could reasonably rely upon Father Flynn to supervise the activities of the boys while they were using the pool.

1. Did the Seminary act in a reasonably prudent manner in failing to adequately bar the access of Fred Rivera and the other boys to the pool ... because it did not have a competent lifeguard in its own employ available to supervise those boys in the pool at that time?

2. In fact did the Seminary adequately bar this access?

3. In the absence of a competent lifeguard of its own present at the pool, if that's what you find happened, present at the pool to supervise these boys, did the seminary satisfy its duty to act in a reasonably prudent manner by relying on Father Flynn as a person competent to supervise the boys at the pool?

4. Was Father Flynn a competent lifeguard? ... If Father Flynn was a competent lifeguard, did the Seminary act in a reasonably prudent manner in failing to anticipate that he might have a lapse in his vigilance, and therefore, should the Seminary, in order to have acted in a reasonably prudent manner, have required that Father Flynn have additional competent assistance? In the absence of such assistance, should the Seminary have closed the pool to the boys?

. . . . .

4. In order to find the Seminary negligent ... it is only necessary for you to determine that someone at St. Charles Seminary failed to act as a reasonably prudent person would have acted under the circumstances.

8. Reasonable care requires that a pool owner such as the St. Charles Seminary take all precautions and actions that a reasonably prudent pool owner would have taken under the same or similar circumstances to guard against the danger of drowning in its pool. If you find that the St. Charles Seminary did not exercise such reasonable care in this regard, then you may find that it was negligent.

9. In determining whether the seminary was negligent, you should consider the extent of possible harm that users of the pool could suffer. A defendant's conduct must be measured against the relative severity of a potential injury. In other words, if you find that there was a risk of a very serious injury or death to those using the pool, you may find that reasonable care required greater precautions than if there was only the risk of a minor injury.

If you find that the seminary failed to provide a lifeguard at the time of the accident in question ... you may find that the seminary was negligent on that basis. That's for you to decide.

. . . . .

No. 5. The seminary did have the legal obligation to exercise reasonable care in the operation and maintenance of its swimming pool.

■ The plaintiff-administratrix's participation in the second trial did not exceed the directions of the Supreme Court or constitute an improper retrial of her claim. The issue, upon retrial, was whether the Seminary had been negligent in causing the decedent's death and, if so, the degree of such negligence in relation to the negligence of the Church. Under Pennsylvania law, if the Seminary were found guilty of causal negligence, it would become liable jointly and severally with the Church. As such, the plaintiff could proceed against either defendant for the full amount of a judgment recovered against both defendants. It was in recognition of this right that the Supreme Court expressly allowed the decedent's administratrix to participate in the new trial. When the Supreme Court further stated that the burden of proving the Seminary's causal negligence would be on the Church, the Court did not limit the plaintiff's participation in the trial in any way. It did no more than recognize that the Church's liability had been established finally in the first trial and that it had the burden of shifting a portion of that liability to the Seminary. The evidence to accomplish this was evidence necessary to establish the Seminary's liability to the decedent's administratrix. Whether the evidence was produced by the plaintiff or the Church at the second trial, therefore, was of no consequence. So long as the evidence was competent, it was immaterial whether the same was presented by the Church or by the plaintiff-administratrix. The Seminary is not entitled to a new trial merely because the plaintiff-administratrix participated fully in the second trial.

■ A more troublesome issue is that pertaining to a statement made by counsel for the plaintiff-administratrix during closing argument which told the jury that the jury in the first trial had found the Seminary responsible with the Church for the boy's death. Not only was there no evidence of this fact, but counsel and the trial judge had agreed pre-trial that no reference would be made to the prior verdict during the second trial. For plaintiff's counsel to violate this agreement and to place before the jury

information which was irrelevant and prejudicial and about which no evidence had been produced was indefensible.

Appellees contend that counsel's remark was a proper response to a statement by appellant's counsel that a witness "believes what the first jury in this case concluded, that Fred Rivera drowned because Father Flynn did not perform his job as the lifeguard in a safe and competent manner." We reject this argument. The statement by appellant's counsel was consistent with information which had been given to the jury by the court, i.e., that the prior jury had found the Church liable to the plaintiff. The purpose of the action then being tried by the jury was to determine whether the Seminary was jointly and severally liable with the Church for Frederick Rivera's death, and the jury was so instructed. For counsel to tell the jury that a prior jury had already made this determination was clearly improper.

■ It appears, however, that counsel's remark was cured by a careful and thorough cautionary instruction delivered by the learned trial judge. The judge said:

There was, during closing argument, some discussion between counsel concerning what happened at the prior trial with respect to the seminary. This is unfortunate, it's not something that was supposed to be placed before you, because your decision on this is supposed to be an entirely independent decision. You go on what you heard here, how you sized it up and what you believe the truth of the matter is. You don't go on what you think someone else might have done. That's not at all important. It's quite unusual for a jury at a second trial—and we don't get that many second trials, by the way. I've been a Judge here ten years in the Common Pleas Court, and in another Court before that. This is only about the third or fourth one I've had, so they don't come down for trial that often, back down. Rarely when they do is the same thing done precisely as it was done the first time.

Furthermore, in this case I must tell you that the jury at the first trial was given totally erroneous instructions

by the Judge, the Trial Judge at that time who is now a retired Judge, but was a highly respected Judge and an outstanding lawyer before that and very well thought of, but he did have a lapse in instructing the jury on the question of the seminary's negligence in this matter. Both the Superior Court and the Supreme Court characterized his instructions on that point as incomprehensible and of very little use to the jury. It's really hard to tell what the jury would have done in that case had they been given a proper charge. Their decision on that point is best dismissed as guesswork because of the inadequate jury charge they received.

So again, that's another reason why you shouldn't worry about what was done before. That's not your mandate, you're not supposed to worry about that in this case. This case is before you, it's entirely within your discretion to do whatever you think is proper in the case, provided you do follow the guidelines which I'm going to give you.

The Supreme Court has repeatedly held that "the matter of withdrawing a juror because of [a] line of argument pursued by counsel in addressing a jury or at any stage of the proceeding is subject largely to the discretion of the trial court." *Martin v. Philadelphia Suburban Transportation Co.*, 435 Pa. 391, 394, 257 A.2d 535, 537 (1969). "Whether a court abuses its discretion in refusing to [declare a mistrial] because of improper remarks of counsel must be determined by the circumstances under which the statement was made and by the precautions taken by the court and counsel to prevent its having a prejudicial effect." *Id.* In this case, the trial court denied a motion for mistrial after the improper remark had been made and carefully instructed the jury that the prior jury had been given incorrect instructions on the law and that its finding was not reliable and did not relieve the jury in this case of its duty to make an independent determination of the Seminary's fault based on the evidence which it had heard. This was adequate to cure the improper statement by plaintiff's

counsel. The trial court did not abuse its discretion by refusing also to declare a mistrial.

■ The trial court did err, however, in awarding delay damages against the Seminary at the rate of ten (10%) percent per annum. The original verdict had been returned on May 4, 1981. Delay damages were thereafter added, and judgment was entered in favor of the plaintiff and against the defendants in the amount of $1,035,393.40. This judgment bore interest at the legal rate of six (6%) percent. The amount of the judgment was thereafter affirmed by the Supreme Court. A new trial was granted to the Seminary only to determine the portion of the judgment, if any, which the Seminary was required to pay. The burden of proving such liability was placed on the Church and not on the plaintiff. When it was subsequently determined in a second trial that the Seminary's proportionate part of the liability was to be 31.6% of the judgment previously entered, that part of the judgment should have borne interest at the same rate which was already accumulating against the Church, i.e., six (6%) percent. The amount of the judgment had been determined—it was not subject to negotiation prior to the second trial—and it was then accumulating interest at the statutory rate of six (6%) percent. The Seminary's liability was a portion of this amount. The amount of plaintiff's recovery could not be enhanced by the verdict in the second trial. This amount had been determined; judgment had been entered therefor; and it bore interest at the legal rate.

The purpose of Pa.R.C.P. 238 is, inter alia, to expedite the handling of cases by promoting early settlements. Its applicability must be determined according to whether a pre-trial offer of settlement, if any, was reasonable in light of the verdict subsequently returned by the jury. After a verdict has been returned, it bears interest at the legal rate of six (6%) percent This rate of interest has been established by statute. See: 42 Pa.C.S. § 8101 and Act of January 30, 1974, P.L. 13, No. 6, § 202, 41 P.S. § 202. Here, the amount of the plaintiff's recovery had been

determined on May 4, 1981; judgment had been entered; and the judgment had been affirmed by the Supreme Court. This judgment earned interest at the legal rate of six (6%) percent. When it was subsequently determined that the Seminary's proportionate part of the liability was 31.6%, the Seminary was required by statute to pay, in addition, interest at the rate of six (6%) percent so long as the judgment remained unpaid. To assess delay damages at the rate of ten (10%) percent was not authorized by statute or by the terms of R.C.P. 238. Not only was it unauthorized, but such an assessment served only to punish the Seminary because it was a defendant which had won a new trial because of error committed by the court during the first trial. Such a result would be unconscionable.

The judgment entered by the trial court is modified by eliminating the award of delay damages at the rate of ten (10%) percent and substituting therefor post-judgment interest at the legal rate of six (6%) percent. As so modified, the judgment entered by the trial court is affirmed.

CIRILLO, President Judge, filed a concurring statement.

BROSKY, J., filed a concurring and dissenting opinion.

CIRILLO, President Judge, concurring:

I concur in the result reached by my esteemed colleague, Judge Wieand. I write separately to discuss certain issues that the majority opinion does not address. Specifically, the appellant has advanced constitutional challenges to Pennsylvania Rule of Civil Procedure 238. While previously I have dissented to majority opinions concerning Pa.R.C.P. 238, in the interests of uniformity and stability in the law, I will now concur.

My feelings on the constitutional infirmities of Pa.R.C.P. 238 have been duly recorded. *See Dietrich et al. v. J.I. Case Co. et al.,* 390 Pa.Super. 475, 568 A.2d 1272 (1990) (Cirillo, P.J., concurring and dissenting); *Schrock v. Albert Einstein Medical Center,* 386 Pa.Super. 215, 562 A.2d 875

(1989) (Cirillo, P.J. dissenting); *Ceresini v. Valley View Trailer Park*, 380 Pa.Super. 416, 552 A.2d 258 (1988) (en banc) (Cirillo, P.J. dissenting); *see also Tindal v. Southeastern Pennsylvania Transportation Authority*, 385 Pa.Super. 94, 560 A.2d 183 (1989) (en banc) (Cirillo, P.J., concurring and dissenting); *Snelsire v. Moxon*, 384 Pa.Super. 85, 557 A.2d 785 (1989) (en banc) (Cirillo, P.J., concurring); *King v. Southeastern Pennsylvania Transportation Authority*, 383 Pa.Super. 420, 557 A.2d 11 (1989) (en banc) (Cirillo, P.J., dissenting); *Miller v. Wise Business Forms, Inc.*, 381 Pa.Super. 236, 553 A.2d 443 (1989) (en banc) (Cirillo, P.J., dissenting).

I am aware that we, as Superior Court Judges, may not ignore holdings of our supreme court or en banc decisions of this court. *Dietrich, supra; Commonwealth v. Gambal*, 522 Pa. 280, 561 A.2d 710 (1989). I am also aware, however, that "disagreement among judges is as true to the character of democracy, and as vital as freedom of speech itself." Fuld, *The Voices of Dissent*, 62 Colum.L.Rev. 923, 926 (1962). Moreover, "we may remind ourselves, unanimity in the law is possible in only fascist and communist countries." *Id.*[1]

Having vehemently dissented on the constitutional debilities that I feel pervade rule 238, I now enter a reluctant concurrence. *See* Witkin, *Manual on Appellate Court Opinions*, § 118 (1977). Justice Traynor advises:

Once [the judge] has dissented ... he has had his day. He should yield to the obligation that it is upon him to

1. The value, significance and influence of dissenting opinions in the development of the law are well known to the bench, the practicing bar, and the legislature. *Musmanno v. Eldredge*, 382 Pa. 167, 171, 114 A.2d 511, 512–513 (1955).

The dissenting opinion in *Chisholm v. Georgia*, 2 Dall. 419, [2 U.S. 419,] 1 L.Ed. 440 [ (1793) ], was a contributing factor in the passage of the Eleventh Amendment to the Constitution of the United States; the dissenting opinions in *Scott v. Sandford*, 19 How. 393, [60 U.S. 393,] 15 L.Ed. 691 [ (1857) ], produced the Fourteenth Amendment; the dissenting opinion in *Pollock v. Farmers' Loan & Trust Co.*, 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759 [ (1895) ], became the law of the land by the Sixteenth Amendment....

*Id.*, 382 Pa. at 171–172 n. 2, 114 A.2d at 512–513 n. 2.

live with the law as it has been stated. He may thereafter properly note that he is concurring under compulsion, abiding the time when he may win over the majority, but he should regard dearly enough the stability of the law that governs all the courts in the state not to renew the rataplan of his dissent.

Traynor, *Some Questions on the Work of State Appellate Courts*, 24 U.Chi.L.Rev. 218, 219 (1957). Although I realize that stability is best served by the entry of an indisposed concurrence, I cannot remain silent. Consequently, I feel compelled to once again "renew the rataplan" of previous dissents.

Initially, appellant contends that because rule 238 makes defendants responsible for delays which they did not cause, it violates due process. The parties in *Schrock, King,* and *Miller,* did not engage in any conduct that delayed the trial of their cases. However, because rule 238 does not provide for the exclusion of periods of delay not caused by either party[,]" *Miller,* 381 Pa.Super. at 241, 553 A.2d at 446, delay damages were assessed against the defendants in each of those cases. Likewise here, a portion of the delay was not the fault of either party, yet rule 238 commands us to assess delay damages against the appellant for such delay when no adequate settlement offer has been made, and none of the delay was the fault of the plaintiff. Pa.R. C.P. 238(b)(1).

By merely subtracting the delay caused by the plaintiff from the overall delay, rule 238 makes defendants responsible for delays caused by neither party. *Ceresini,* 380 Pa.Super. at 421, 552 A.2d at 260 (Cirillo, P.J., dissenting). This calculation makes defendants culpable simply because they have chosen to defend their case. *Id.; Dietrich,* 390 Pa.Super. at 491, 568 A.2d at 1280 (Cirillo, P.J., concurring and dissenting).

The appellants additionally contend that, although procedural, rule 238's application impacts the substantive rights of litigants.

The Pennsylvania Constitution vests in the Supreme Court "the power to prescribe general rules governing practice, procedure and the conduct of all courts ... *if such rules* are consistent with this Constitution and *neither abridge, enlarge nor modify the substantive rights of any litigant* ..." Const. art 5, § 10(c) (emphasis added). Pursuant to this power, the Supreme Court appointed a Civil Procedural Rules Committee to assist in the preparation and revision of the Rules of Civil Procedure, which were adopted by the Supreme Court. See, 42 Pa.C.S., Rules of Civil Procedure, at XXV.

The Constitution specifically states that the Rules of Civil Procedure do not enlarge the substantive rights of any litigant.

*Svetlik v. Svetlik*, 377 Pa.Super. 496, 500, 547 A.2d 794, 796–797 (1988). Because, in my opinion, rule 238 operates to alter the substantive rights of the parties, it exceeds the rulemaking authority of the Pennsylvania Supreme Court, and is therefore unconstitutional. *Dietrich*, 390 Pa.Super. at 491, 568 A.2d at 1280 (Cirillo, P.J., concurring and dissenting). The supreme court, in *Craig v. Memorial Rehabilitation Center*, 512 Pa. 60, 515 A.2d 1350 (1986), suspended former rule 238 under the following rationale:

There is no point in contending that a procedural rule may exist that punishes without fault, and is yet consistent with Due Process. Neither is there point in arguing that punishing a defendant qua defendant does not smack of a substantive enlargement of duties owed.... We today suspend the rule because experience shows that the ends sought run too tight a gauntlet through Due Process, by denial of a forum to assess fault for the delay sought to be avoided. In short, Rule 238 has become an [i]ncontestable presumption that all fault lies with a defendant. There are too many reasons why such is not always the case ...

*Id.*, 512 Pa. at 65, 515 A.2d 1353. The concerns that led to the demise of the old rule 238 are still present, albeit to a lesser extent, in the new rule. The current rule 238, in an

effort to encourage the settlement of meritorious claims and alleviate court congestion, continues to run too tight a gauntlet through due process, by denying defendants an exclusion for periods of delay that were the fault of neither party. Consequently, rule 238, as previously stated, punishes defendants simply because they have chosen to litigate their case. *Dietrich,* 390 Pa.Super. at 491, 568 A.2d at 1280 (Cirillo, P.J., concurring and dissenting). It therefore remains clear that punishing a defendant *qua* defendant in the form of delay damages is a substantive enlargement of duties owed; an enlargement which under the Constitution of this Commonwealth requires legislative action. *Id.*

Moreover, the current rule 238 has become an "incontestable presumption" that all fault that is not the plaintiff's fault lies with the defendant. The instant matter, as well as *Schrock, King,* and *Miller,* illustrate that such is not always the case.

BROSKY, Judge, concurring and dissenting.

I concur with the majority's conclusion that the trial court properly charged the jury as to the Seminary's duty to provide a lifeguard. I also concur in the majority's discussion of the issues pertaining to the trial court's assessment and calculation of delay damages. However, I disagree with the majority's finding that the participation by the plaintiff-administratrix (hereinafter referred to as Rivera) did not exceed the scope of the remand instructions of the Supreme Court. Further, I disagree with the majority's conclusion that the cautionary instruction given by the trial court was sufficient to cure counsel's prejudicial remarks pertaining to the jury verdict in *Rivera I.* Hence, I must respectfully dissent.

Although the majority has correctly recognized that the Supreme Court placed the burden of proving the Seminary's liability upon the Church, *see ante* at p. 1345, it nevertheless proceeds to affirm the trial court's decision to permit Rivera to re-litigate her case. Because I would interpret the remand instructions of the Supreme Court in a different

manner, I find that appellee's participation in this case exceeded the scope of participation permitted by the Supreme Court.

Prior to the beginning of the second trial, both counsel for the Seminary and Rivera's counsel had a lengthy discussion with the trial court regarding the proper interpretation to be accorded the Supreme Court's opinion in *Rivera I.* *See* N.T., 4/11/88, Volume I. Rivera's counsel and the trial court appeared to operate under the assumption that if Rivera was not permitted to relitigate her case as to the issue of liability, then Rivera's cause of action against the Seminary would be eliminated. *See* N.T., 4/11/88, Volume I at p. 51. Based on this conclusion, the trial court permitted Rivera to relitigate the liability portion of her case against the Seminary and the Church. However, this reasoning was erroneous.

This is a case involving joint tortfeasors. In cases of this type, the plaintiff may collect the judgment against any one of the tortfeasors found to be liable. *See* 42 Pa.C.S.A. § 7102(b) and *Rivera I,* 510 Pa. at 23–25, 507 A.2d at 12–13. After the first trial in this case, the Church failed to raise the finding of liability either in its post-trial motions, or in its direct appeal to the appellate courts. As a result, all issues pertaining to the liability of the Church were deemed waived, and the judgment against the Church became binding and enforceable. Consequently, the Church became liable for the *entire* amount of the judgment. Because the judgment for the full amount of the damages remained intact, there was no need for Rivera to fully participate in the second trial as if the judgment had been eradicated. *See Rivera, id.* Therefore, the idea that Rivera's cause of action would be eliminated if she were not allowed to relitigate her case is unfounded.[1]

---

**1.** The real problem in this case is not that the cause of action would be eliminated; rather, the difficulty lies in collecting the judgment from the Church. It appears from the record that the limits of the Church's liability policy were substantially less than the amount of the judgment. Thus, if it had been determined in the second trial that the Seminary had not been negligent, the Church would have been liable

In *Rivera I,* the Supreme Court awarded a new trial to the Seminary *"solely* for the purpose of determining the Seminary's proportionate responsibility to the Church, if any." *Id.,* 510 Pa. at 25, 507 A.2d at 13 (emphasis added). In addition, the Supreme Court directed that Rivera should be permitted to participate in the new trial, if she so desired. The permission to participate, however, was not for the purpose of allowing Rivera to relitigate her entire case against the Seminary; rather, the only purpose of the new trial was to determine whether the Seminary's negligence, if any, caused the death of Rivera's son, and the burden of proof on this issue was to be allocated to the Church, not Rivera. *Id.,* 510 Pa. at 26, 507 A.2d at 14.

Although the Supreme Court expressly stated that Rivera was permitted to "participate" in the new trial, the extent of Rivera's participation was not further defined, limited or explained by the Supreme Court. The majority concludes that Rivera's excessive participation was immaterial and of no consequence, since the same evidence would undoubtedly have been presented by the Church. I disagree with this statement. This case involved the drowning of a teenage boy. Certainly, in comparing his mother to the Church, she appears as a plaintiff with whom the jury is likely to

for the entire amount of the judgment. Under this scenario, it is probable that Rivera would have been unable to collect the remainder of the judgment once the policy limits had been exhausted. On the other hand, if the Seminary is found to be liable, then it is evident that Rivera's chances of collecting a greater portion of the judgment are substantially increased.

Problems of collecting a judgment from a tortfeasor, however, are irrelevant to the question of whether a valid, enforceable judgment is in existence. Rivera successfully obtained a judgment against one of the tortfeasors who was found to have caused the death of her son. Once this event occurred, she was precluded from obtaining a judgment against any of the other tortfeasors for the *same* cause of action. Consequently, the only question to be resolved in the new trial was whether the Seminary was negligent in causing the death of Rivera's son, and if so, then in what proportion. Although Rivera's participation in the Church's action against the Seminary would certainly be prudent and might enable her to protect and possibly increase her chance of ultimately recovering a larger portion of the judgment, her presence at the second trial was completely unnecessary, since her right to collect the judgment had been previously established.

sympathize. Thus, by having Rivera litigate the case instead of the Church, the jury might have been more inclined to find against the Seminary. For this reason, I am unable to conclude that Rivera's participation was immaterial and of no consequence.

In addition, I believe that if the Supreme Court had intended that Rivera should re-try her case in its entirety against the Seminary, then it could easily have directed that the second trial would be held between Rivera and the Seminary. In the alternative, the Supreme Court could have remanded for a new trial as to all parties. Because it chose neither of these options, I would infer that the Supreme Court envisioned a more limited scope of participation for Rivera.[2] Because the new trial was to be specifically between the *Church* and the Seminary instead of Rivera and the Seminary, I would find that the trial court erred in failing to comply with the remand instructions of the Supreme Court. Accordingly, I would reverse and remand for a new trial to be held in accordance with those instructions.

The next point on which I disagree with the majority concerns the highly prejudicial remarks made by Rivera's counsel. Prior to trial, counsel for all the parties agreed upon what information should be provided to or withheld

**2.** The reason for Rivera's limited role arises out of the fact that Rivera and the Church would stand in a similar position in the second trial, as both parties have an interest in having the Seminary found liable. Due to the identity of interests between Rivera and the Church, there would be no need for each party to present its case since any evidence presented by Rivera would in all likelihood be cumulative to that presented by the Church. Further, the presence and limited participation by Rivera's counsel would protect Rivera's interest by decreasing the chance that the Church would not vigorously litigate its case or otherwise appear to be acting in collusion with the Seminary. Therefore, I would interpret the Supreme Court's instructions as limiting Rivera's participation to the cross-examination of witnesses, if necessary, and the presentation of evidence in the Church's case, if it is not merely cumulative to the evidence presented by the Church. Finally, I would not permit opening or closing statements to be made to the jury, since Rivera's case was not subject to relitigation. A procedure of this type would enable Rivera to protect her interest, and would be in compliance with the remand instructions of the Supreme Court.

from the jury. *See* N.T., 4/11/88, Volume I at p. 11–13 and 56–62. Specifically, it was determined that the jury would not be instructed of the result of the first trial. However, in the rebuttal portion of his closing, Rivera's counsel, Mr. Stopford, discussed the results of the first trial and the fact that the jury found the Seminary to be liable. He stated:

Mr. Penders [counsel for the Seminary] also says that his expert agrees with what the first jury found, that Father Flynn was solely responsible. *That's not what the first jury found. The first jury found they were both responsible.* [Emphasis added.]

N.T., 4/18/88, Volume VI at p. 88. These comments, however, were made in response to the closing remarks of Mr. Penders, who stated:

He [Mr. Harris, the expert witness for the Seminary] ... would have been the perfect expert for Mr. Stopford to use ... because he believes what the first jury in this case concluded, that Fred Rivera drowned because Father Flynn did not perform his job as the lifeguard in a safe and competent manner.

N.T., 4/18/88, Volume VI at p. 85.

In his opening charge to the jury, the trial court informed the jury that the Church had been found liable. *See* N.T., 4/12/88, Volume II at p. 16. Mr. Penders' closing remarks did nothing more than reiterate this fact; they did not imply that the jury did not find the Seminary to be free from liability. Mr. Stopford violated the parties' agreement, however, by specifically informing the jury that the jury in the first trial had found the Seminary liable. This statement, although made in response to Mr. Penders' comments, clearly exceeded the scope of fair argument, and as recognized by the majority, was prejudicial and indefensible. *See* majority opinion ante at p. 1345. Despite this conclusion, the majority believes that the trial court's instruction was sufficient to cure any prejudice to the Seminary.

In the charge to the jury, the trial judge admonished the jury that these comments should be ignored. *See* N.T.,

4/18/88, Volume VI at pp. 99–101. Due to the highly prejudicial nature of these remarks, I believe that they exerted some influence upon the jury, even though the trial court admonished the jury to ignore this comment. The jury in this case found the Seminary to be 70% negligent, which is almost twice the amount of liability which the first jury imposed. Thus, it is certainly possible that these remarks, despite the trial court's charge, influenced the jury's verdict to some degree. Therefore, I would find that a new trial should be awarded on this basis as well.