## Sgro v. Canale

C.P. of Delaware County, no. 93-11221.

*Kathleen S. Clair,* for plaintiffs.
*Michael A. Scannapieco,* for defendants Canale.
*Daniel J. Hart,* for additional defendant Conair Corp.

McGOVERN, *J.*, August 2, 1996—Robert, Nancy and Laura Canale, both defendants and third party plaintiffs in the above-captioned matter, have filed this appeal following the denial of their post-trial motions.

A fire damaged the defendants' home and that of the adjoining home belonging to plaintiffs, Samuel and Mary Sgro, on April 22, 1992. The fire was apparently caused by a curling iron manufactured by additional defendant, Conair Corporation. The curling iron may have been plugged into an extension cord and left on a dresser while still plugged in. Several days later, the iron fell from the dresser onto or near a pile of clothes, thus initiating the conflagration.

The plaintiffs initiated this action in negligence against the defendants Canale, who, in turn, joined Conair Corporation as an additional defendant, alleging a theory of strict product liability.[1] The jury found that the curling iron in question was not defective, and, therefore, found in favor of additional defendant against the defendants Canale.[2]

## WAIVER

Defendants have raised a number of contentions relating to various requested points for jury instructions.

---

1. Defendants also alleged negligence and breach of warranty against the additional defendant, but these theories were withdrawn at trial. The parties stipulated that the damages were in the amount of $100,000 for the plaintiffs Sgro and $225,000 for the defendants Canale.

2. The jury also found in favor of the plaintiffs Sgro against the defendants Canale, but no issue is raised in that regard on this appeal. Defendants Canale have expressed, pursuant to Pa.R.A.P. 908, their intention to proceed solely against appellee, Conair Corporation. Plaintiffs have taken no action in this matter. Therefore, the sole issue raised in this appeal rests in the cause between defendants Canale and additional defendant pursuant to Restatement (Second) of Torts §402A.

However, the only exception taken at trial was to defendants' point no. 11. (12/8/94 N.T. 79-83.) Therefore, pursuant to Pa.R.C.P. 227, 227.1(b)(1), and Pa.R.C.P. 302(b), defendants have waived any right to appeal concerning contentions raised other than as to defendants' point no. 11 which requested, in sum, instructions using specific language referring to "reasonably foreseeable misuse" of the product.

Defendants Canale had raised several contentions as regards the additional defendant, Conair Corporation, among which was the contention that the curling iron lacked appropriate safety features, namely, an automatic timed shut-off switch, a thermostatic shut-off switch, and a more heat resistant electrical cord. A fair review of this court's instructions will indicate that this aspect of the defendants' case was the subject of rather thorough instructions to this jury. (12/8/94 N.T. 59-60, 67-74.)

## JURY INSTRUCTION

Defendants contend that the trial court erred in failing to instruct using specific language concerning "reasonably foreseeable misuse" of the product.

The evidence supported only a conclusion that the defendants' 11-year-old daughter, Laura, or one of her contemporaries, used this curling iron to style their hair a week before the fire. Defendants' theory was that one or all of the "safety" features hereinabove mentioned would have prevented this fire. The court's instructions focused on the manufacturer's responsibility to assure a lack of defect for the reasonably intended use of this product. Defendants Canale requested that the court additionally instruct negatively that the manufacturer has a duty to guard against reasonably

foreseeable misuse of its product. Since the use of this product includes plugging it in, sitting it on furniture when not in use or while waiting for it to heat, the semantic difference between the word "use" and "misuse" in the circumstances of this action adds nothing but confusion to the issues, since there is no evidence besides the fire regarding what happened with or to this product after its use by Laura or her friends. Further, the language "reasonably foreseeable misuse" is sufficiently vague in this context that it might have allowed the jury to confuse concepts of defendants' own negligence in their deliberations concerning strict products liability.

This jury was instructed that the product must be safe for its intended use, namely, for the curling of hair by the application of heat. Since a certain degree of heat is necessary for the product to operate, it would be impossible to eliminate all possible risk. Therefore, the jury was left to determine, among other questions, whether under the circumstances of this case the absence of any of the three safety features recommended by the defendants and their expert rendered this product defective.

The court must determine whether there was a clear error of law or a palpable abuse of discretion in rendering a decision which controlled the outcome of the case before a new trial will be granted. *Stevenson v. General Motors Corp.,* 513 Pa. 411, 521 A.2d 413 (1987); *Klyman v. SEPTA,* 331 Pa. Super. 172, 480 A.2d 299 (1984); *Tyus v. Resta,* 328 Pa. Super. 11, 476 A.2d 427 (1984); *Leslie v. Pennco Inc.,* 323 Pa. Super. 23, 470 A.2d 110 (1983). Such finding must be founded upon clear and convincing evidence. *Dalton v. Dalton,* 409 Pa.

Super. 258, 597 A.2d 1192 (1991). The court's instructions must be viewed in their entirety, with the light of this record shed upon it, to determine whether or not there was prejudicial error such as would warrant a new trial. *Lockhart v. List,* 542 Pa. 141, 665 A.2d 1176 (1995); *Reilly by Reilly v. SEPTA,* 507 Pa. 204, 489 A.2d 1291 (1985); *Gallo v. Yamaha Motor Corporation USA,* 363 Pa. Super. 308, 526 A.2d 359 (1987). It is the function of a trial court to communicate to the jury the applicable principles of law which are fairly raised by the evidence in a particular case so as to enable the jury to understand the questions it must decide and how the law is to be applied thereto. *Hrivnak v. Perrone,* 472 Pa. 348, 372 A.2d 730 (1977).

The trial court, of course, is not obligated to give specific wording requested by counsel so long as the appropriate law is reasonably covered. *Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo Inc.,* 398 Pa. Super. 264, 580 A.2d 1341 (1990); *Brandimarti v. Caterpillar Tractor Co.,* 364 Pa. Super. 26, 527 A.2d 134 (1987), *alloc. denied,* 517 Pa. 629, 539 A.2d 810 (1988); *Beechwood Commons Condominium Association v. Shapiro,* 397 Pa. Super. 217, 580 A.2d 1 (1990); *Commonwealth v. Ohle,* 503 Pa. 566, 470 A.2d 61 (1983); *Commonwealth v. Melendez,* 326 Pa. Super. 531, 474 A.2d 617 (1984). The court's responsibility, in sum, is to communicate with the jury, in understandable terms, what the law is and how it applies to the case before them. *Lilly v. Johns-Manville Corporation,* 408 Pa. Super. 83, 596 A.2d 203 (1991); *Elder v. Orluck,* 334 Pa. Super. 329, 483 A.2d 474 (1984).

Defendants alleged in their complaint against Conair that the subject curling iron was negligently placed

by one of the defendants or an individual under their control "on, next to, or in close proximity with" combustible materials without being turned off for an entire week, thus causing the fire. The curling iron was claimed to be defective in its "design, manufacture and sale" due to Conair's alleged failure to provide proper warnings, and because it did not come equipped with either an automatic timed shut-off mechanism or a thermostatic control which would turn the unit off when its heating mechanism reached a temperature high enough to ignite combustibles. (Joinder complaint, Count III, paragraphs 20(a) through (f).) A third contention of defect was introduced by defendants at trial, this being that an electrical cord with a thicker covering would have withstood the heat of the curling iron and not burned through as in the scenario of events described by defendants, and failure to manufacture the curling iron without such a cord made the product defective and thus unsafe for its intended use.[3]

Part of the defendants' argument is founded upon opening and closing statements. The jury may consider closing statements insofar as they aid in their delib-

---

3. The entire record has not been transcribed. Therefore, Pa.R.A.P. 1922(b)(3) pertains and "untranscribed notes or recordings shall not be part of the record on appeal for any purpose." Further, neither request nor order for diminution of transcription has been presented. Pa.R.A.P. 1922(b)(1). Audio cassette recordings of the entire proceeding are available.

Since the movant of post-trial motions is required to request transcription of those portions from the record which will enable the court to dispose of such motions, any portions thereof not requested by the parties are deemed unnecessary to the disposition of such motions. Pa.R.C.P. 227.3; Pa.R.J.A. 5000.5(a) and (b); Pa.R.A.P. 1911 et seq.

eration, but they, of course, are not bound by any argument made by counsel. *Commonwealth v. Cottam,* 420 Pa. Super. 311, 616 A.2d 988 (1992). This jury was accordingly so instructed, and it is presumed that the jury followed those instructions. *Commonwealth v. Baker,* 531 Pa. 541, 614 A.2d 663 (1992); *Commonwealth v. Thompson,* 442 Pa. Super. 447, 660 A.2d 68 (1995); *Parker v. Randolph,* 442 U.S. 62, 99 S.Ct. 2132 (1979). Opening and closing statements are not considered in determining whether or not the court's instructions were focused in light of the evidence presented at trial. It is not possible for a court to review all of the evidence in this case because the transcription of that evidence is incomplete.

It is clear, however, that defendants contend that the misuse here involved "11-year-olds," friends of the defendants' daughter, Laura, leaving the curling iron on and unattended in their daughter's second-floor bedroom, where it remained for a week without incident. As has hereinabove been suggested, such conduct can be called "use," and using the word "misuse" adds nothing to the legal instructions appropriate hereto.

The manufacturer's liability for defective products is outlined in Restatement (Second) of Torts §402A, and adopted by the Pennsylvania Supreme Court in *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966). The court's instructions to this jury fairly shadowed the principles therein set forth. Defendants Canale were legally mandated to establish that the curling iron was sold in a defective condition, without automatic time and thermostatic control shut-offs, and a heavier electric cord, and that such was a defect and the proximate cause of harm. *Berkebile v. Brantly Helicopter Corp.,*

462 Pa. 83, 337 A.2d 893 (1975). If such a defective product causes harm to the ultimate user, the manufacturer is strictly liable. *Francioni v. Gibsonia Truck Corp.,* 472 Pa. 362, 372 A.2d 736 (1977); *Burch v. Sears, Roebuck and Company,* 320 Pa. Super. 444, 467 A.2d 615 (1983); *Webb v. Zern, supra;* Restatement (Second) of Torts §402A. A product is defective if it is unsafe for its intended use. *Azzarello v. Black Brothers Co. Inc.,* 480 Pa. 547, 391 A.2d 1020 (1978).

A product is defective only where it is unsafe for its intended use. It is by definition not defective where the actual use is "abnormal." *Burch v. Sears, Roebuck and Company, supra* at 451-52, 467 A.2d at 619. Such an "abnormal" use will negate liability only where it was not reasonably foreseeable. *Burch v. Sears, Roebuck and Company, supra; Eshbach v. W.T. Grant & Co.,* 481 F.2d 940 (3d Cir. 1973). The defendants Canale insisted that their version of this fire and the curling iron's role therein was foreseeable to the additional defendant, Conair Corporation. A review of the evidence in this matter will indicate, however, that there are many possibilities for the causation of the fire, some of which suggest that the curling iron played no role at all, while others suggest that the defendants' active negligence was the sole cause.

A fair review of the court's instructions indicated that the law concerning product liability was accurately communicated to this jury by explaining that law and how it applied to the case at bar. (See 12/8/94 N.T. 38-79.) *Azzarello v. Black Brothers Co., supra,* citing Pennsylvania Standard Civil Jury Instruction 8.02, June 6, 1976.

It remains to be determined whether the court's instruction is adequate in light of the evidence presented at trial. The evidence supports the conclusion that approximately one week before this fire, the defendants' daughter, Laura, and other "11-year-olds," or some of them, used the curling iron in Laura's bedroom. The location, and even the presence of the curling iron during the ensuing week, is unclear from the evidence because no one of the Canale family said they remembered seeing the curling iron except Mrs. Canale, who did not remember seeing it at trial but in a prior deposition did remember seeing it in Laura's room on the day of the fire. She could give no specific location, however, and no one could testify as to where the curling iron was plugged in for electricity, or whether it was plugged into an extension cord which was then plugged into the wall. Despite insisting upon her knowledge of the dangers of such, the youngster Laura said that she did not check the curling iron after her friends had used it, nor did she ever speak with them about it. There is no evidence from any defendant that it had been unplugged. None of the youngster's friends were presented as witnesses. The evidence clearly invited speculation by the jury regarding the facts as to use or misuse of this product.

The expert testimony at trial proposed differing opinions as to where the curling iron could have been and how the fire was ignited. Some opinions suggested that the iron was on the floor and ignited nearby clothing. Another suggested the curling iron was sitting in a laundry basket with laundry placed on top of it by Mrs. Canale on the afternoon of the fire. (See plaintiffs' trial exhibit P-34.) One expert opined that the fire began

within 12 minutes from the time the iron came into contact with nearby combustibles, but that compares unfavorably with recollections of the defendants' son, Samuel (9 years of age) who testified that he was playing with "stuff" in his sister Laura's room for an hour before going to sleep there in his sleeping bag in the area of the location where the fire occurred.

The foregoing thus provided a sufficient basis for the jury to conclude that either Mrs. Canale set into motion the events which would give rise to ignition, or Samuel, or the 11-year-old school girls, or some unknown cause of ignition.

Other expert witnesses opined that the fire was electrical in origin, as opposed to being "heat based," and according to the Delaware County fire investigator and an electrical engineer, together with defendants' trial expert, ignition could have been created by an electrical short circuit causing "arcing" between the electrical supply cord and the curling iron. Such could have also occurred with the extension cord. The arcing would have caused flying bolts of molten metal which ignited clothes lying on the bedroom floor.[4] These opinions differed only as to the point of the electrical short circuit. Some witnesses opined that the short occurred by the curling iron coming into contact with the electrical supply cord, thus causing the short. Other opinions suggested that the short occurred because of an overheated electrical extension cord into which the curling iron had been plugged. A burnt and partially disintegrated extension cord was found along the wall in Laura's

---

4. See Bierely reports, trial exhibits P-3 and P-4; Talvacchio report, trial exhibit P-35.

room after the fire. Finally, the additional defendant's expert witness opined that ignition came from some unknown source entirely, reasoning that if the iron had caused the fire, it would have been totally destroyed in the process, and it was not. The testimony indicated that post-fire conditions rendered it impossible for anyone to reasonably determine where the curling iron had been at the time of the fire's ignition. The jury, therefore, had ample evidence in this record upon which to conclude that the cause of this fire was not any defect in the curling iron.

It is within the jury's province to assess the credibility and weight of the evidence. *Neison v. Hines,* 539 Pa. 516, 653 A.2d 634 (1995). The jury may accept some, all or none of the testimony presented by witnesses. *Gaita v. Pamula,* 385 Pa. 171, 122 A.2d 63 (1956). The verdict, of course, may not be the product of passion, prejudice, partiality, or corruption, and it must bear some reasonable relation to the evidence presented. *Slaseman v. Myers,* 309 Pa. Super. 537, 455 A.2d 1213 (1983). The evidence in the case at bar is far from clear as to how this fire was ignited, how this product was used or even if this product was used in a way not foreseeable to the additional defendant. There was also sufficient evidence upon which this jury could conclude that the product was defect-free in the case at bar.

Further, while the terms "use" and "misuse" may have some significance to one knowledgeable in the law, and when used in court opinions, there is to a layperson no discernable difference when used in the context of instructions concerning strict product liability. Misuse is after all a use in common parlance. The

focus for the jury was to determine the foreseeability of that use (whether use or misuse) to the manufacturer. Using the terms use and misuse here might have tended to confuse the jurors.

Defendants rely upon the case of *Pegg v. General Motors Corp.,* 258 Pa. Super. 59, 391 A.2d 1074 (1978), cited both in point no. 11 and their brief to support their position. However, the issue before the Superior Court in that case was whether or not there existed a cause of action where the misuse of a product might be involved. That case had nothing to do with proper jury instructions. There, the issue was whether a thief, rather than a consumer, broke the privity link between manufacturer and plaintiff in the line of the product's distribution, and whether, despite having received the product from the thief, the plaintiff had a 402A claim for defective design and failure to warn; and secondly, whether the thief himself had such a claim. There, the injury was caused to plaintiff by the explosion of a chemical stolen from a municipality. Judge Spaeth, in that decision, wrote that abnormal use pertains to "superseding cause," an issue undecided in that case, and not raised in this action. Such obviously suggests that the misuse of property, therefore, relates to the concept of cause and not as to the definition of defect. Therefore, the defendants' requested point relates to an issue that the jury, in the case at bar, never had to reach because the jury found no defect.

Defendants also rely upon *Kuisis v. Baldwin-Lima-Hamilton Corp.,* 457 Pa. 321, 319 A.2d 914 (1974). The Supreme Court in that matter was not concerned with "misuse" but rather the "malfunction" theory of liability in such cases, and also whether there was a change in the product between the manufacturer and

the ultimate consumer's hands that became a superseding cause of a defect causing harm. The *Kuisis* court also bound these issues into the rubric of causation, stating that abnormal use forecloses an inference of defect only if it contributed to the complained of malfunction. The court found that the malfunction in issue would have occurred in any event. *Kuisis v. Baldwin-Lima-Hamilton Corp., supra* at 329, 319 A.2d at 920. Here, there is no claim of malfunction, and it is unlikely that this product would have caused the fire absent the action or inaction of defendants.

*Bartkewich v. Billinger,* 432 Pa. 351, 247 A.2d 603 (1968), is another case upon which defendants rely. There, Justice Roberts, speaking for the court, decided that a plaintiff who had injured his hand while knowingly and voluntarily reaching into a glass-crushing machine had no right to recover in a Restatement 402A action. The manufacturer was not required to foresee that a person would voluntarily put himself in so obvious a risk. *Id.* at 356, 247 A.2d at 605. The Pennsylvania Supreme Court, in a brief decision, reversed a judgment in favor of plaintiff with directions for the lower court to enter a judgment notwithstanding that verdict. Although defendants cite this opinion as supporting their request for the "misuse" charge, it actually supports the trial court's instructions in the case at bar, namely, that the manufacturer is required to render the product safe for its intended use. Moreover, in this case, testimony from defendants evinces knowledge of the risks involved in leaving the curling iron on and unattended, and failing to ascertain that such may have been the case in Laura's bedroom. Therefore, the defendants' case authority cited in support of their contention in this regard, and specifically in support of their point

576

for charge no. 11, fails to justify an instruction in the case at bar as defendants sought at trial based on the evidence.[5]

This court is bound to instruct the jury in the light shed by the evidence presented at trial. *Hamley v. Pittsburgh Railways Co.,* 365 Pa. 543, 76 A.2d 181 (1950). The court's function is not to advocate one position or another, but rather to explain the principles of law which are fairly presented by the evidence so as to enable the jury to comprehend the questions it must decide, what the law is, and how it applies. *Hrivnak v. Perrone, supra.* The instructions requested by the defendants added nothing to the law, nor to the court's instructions concerning that law in the case at bar, and, indeed, would have been superfluous and possibly confusing to the jury. Given the inferences available from the evidence that the defendants and not the curling iron caused this fire, the addition of the statement requested by defendants could have been prejudicial to them in that it could have fostered impermissible speculation into defendants' own possible negligence in this strict products liability action.

It is for the foregoing reasons that this court denied the defendants Canale's motion for post-trial relief. It is respectfully submitted that the decision was neither in error nor an abuse of discretion.

---

5. None of defendants' cases support adding the word "reasonably" to the phrase foreseeable use. That addition also sounds in negligence law. It may be recalled that this jury had already heard extensive instruction concerning the law of plaintiffs' case.