478 A.2d 34

**Jeffrey A. GALLEGOR, A Minor, By his Parents and Natural Guardians, Joseph R. GALLEGOR and Clara J. Gallegor, his Wife, in Their Own Right, Appellants,**

v.

**Herman FELDER, M.D. and Children's Hospital of Pittsburgh.**

Superior Court of Pennsylvania.

Argued Feb. 28, 1984.

Filed June 15, 1984.

206

Michael J. Seymour, Pittsburgh, for appellants.

John W. Jordan, IV, Pittsburgh, for Felder, M.D., appellee.

George M. Weis, Pittsburgh, for Children's, appellee.

Before BROSKY, DEL SOLE and MONTGOMERY, JJ.

MONTGOMERY, Judge:

Plaintiff-Appellants file the instant appeal following the lower court's grant of a compulsory non-suit, and the denial by the lower court *en banc* of a motion for the removal of the non-suit. The Appellants instituted this medical malpractice action to seek damages for the injuries sustained by the minor Plaintiff, Jeffrey A. Gallegor, during an ear operation, called a mastoidectomy, performed at the Defendant-Appellee, Children's Hospital of Pittsburgh, by Defendant-Appellee, Herman Felder, M.D. The injuries, to the boy's facial nerve, caused disfigurement, speech, eye and other problems and difficulties. The record shows that the compulsory non-suit was entered at trial, upon the motion of the Appellees, after the Appellants rested their case on the issue of liability. Several contentions of error are raised on this appeal by the Appellants.

First, it is argued that the trial court erred in entering a non-suit, as the available evidence allegedly made such an order improper. Initially, we must recognize the applicable and well-established rule that a compulsory non-suit may be entered only when the plaintiff cannot recover under any view of the evidence, with every doubt resolved against its entry and all inferences drawn most favorably to the plaintiff. *Scott v. Purcell*, 490 Pa. 109, 415 A.2d 56 (1980). Moreover, all conflicts in evidence must be resolved in the plaintiff's favor in the consideration of a defense motion for non-suit. *A.J. Aberman, Inc. v. Funk Building*

*Corp.,* 278 Pa.Super. 385, 420 A.2d 594 (1980). The Appellants maintain that sufficient evidence was presented to support causes of action under theories of *res ipsa locquitur* and lack of informed consent. We shall examine each of these contentions.

In *Gilbert v. Korvette,* 457 Pa. 602, 327 A.2d 94 (1975), the Pennsylvania Supreme Court adopted the Restatement (Second) of Torts, Section 328D formulation of *res ipsa locquitur.* That Section provides:

(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.

(3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.

The Court further held in Gilbert that *res ipsa locquitur* is neither a rule of procedure nor one of substantive tort law. The Court stressed that it was only a short-hand expression for circumstantial proof of negligence—a rule of evidence. Six years later, in *Jones v. Harrisburg Polyclinic Hospital,* 496 Pa. 465, 437 A.2d 1134 (1981), the Court held that the doctrine of *res ipsa locquitur* may be applied in medical malpractice cases, declaring:

We are satisfied that expert testimony should no longer be a *per se* requirement in proof of negligence in all cases of alleged medical malpractice. Expert medical testimony only becomes necessary when there is no fund of common knowledge from which laymen can reasonably draw the inference or conclusion of negligence. Even where there

is no fund of common knowledge, the inference of negligence should be permitted where it can be established from expert medical testimony that such an event would not ordinarily occur absent negligence. Restated, section 328D provides two avenues to avoid the production of direct medical evidence of the facts establishing liability: one being the reliance upon common lay knowledge that the event would not have occurred without negligence, and the second, the reliance upon medical knowledge that the event would not have occurred without negligence. 496 Pa. at 472–73, 437 A.2d at 1138.

In *Jones*, the Supreme Court also noted Comment d. from the Restatement (Second) of Torts, Section 328D, which explains how the rule functions in medical malpractice cases:

d. *Basis of conclusion.* In the usual case the basis of past experience from which this conclusion may be drawn is common to the community, and is a matter of general knowledge, which the court recognizes on much the same basis as when it takes judicial notice of facts which everyone knows. It may, however, be supplied by the evidence of the parties; and expert testimony that such an event usually does not occur without negligence may be essential to the plaintiff's case where, as for example in some actions for medical malpractice, there is no fund of common knowledge which may permit laymen reasonably to draw the conclusion. On the other hand there are other kinds of medical malpractice, as where a sponge is left in the plaintiff's abdomen after an operation, where no expert is needed to tell the jury that such events do not usually occur in the absence of negligence. 496 Pa. at 473, n. 11, 437 A.2d at 1138, n. 11.

In the *Jones* case, the plaintiffs presented uncontroverted expert medical testimony which established that the harm suffered by the plaintiff did not ordinarily occur in the absence of negligence. In the instant case, no expert medical testimony to that effect was presented. Rather,

the Appellants have merely asserted that there exists a fund of common knowledge from which the lay jury could conclude that the injury to Jeffrey Gallegor's facial nerve would not ordinarily occur without negligence. The lower court explicitly rejected this contention, finding that there was no such fund of common knowledge from which laymen could infer negligence on the part of the Appellees in this case. We are constrained to agree.

It is certainly highly regrettable that Jeffrey's facial nerve was damaged during the course of the operation.[1] However, no inference of negligence arises merely because a surgical operation terminates in an unfortunate result which might have occurred even though the proper care and skill had been exercised. See *Robinson v. Wirts*, 387 Pa. 291, 127 A.2d 706 (1956). The operative reports presented by the Appellants and the testimony of an expert medical witness were highly technical and were largely in complicated medical terminology. As noted above, there was a complete absence of evidence to show that the harm which befell Jeffrey would not have occurred in the absence of medical malpractice, and the nature of the harm suffered in this case cannot be held to be so simple and obvious that a conclusion of negligence could reasonably or properly be reached by a layperson based upon ordinary experience and comprehension. This is simply not the equivalent of a situation in which a surgical tool is negligently left inside a person after an operation. Therefore, we find no basis to reverse the lower court's action regarding the non-suit, based upon the Appellants' *res ipsa locquitur* claims.

We next turn to the Appellants' argument that the lower court erred in entering a non-suit because the Appellants allegedly presented sufficient evidence to warrant submitting the case to the jury on the theory of lack of

1. We note that a subsequent operation, two years after the first, fortunately resulted in the restoration of much of the facial movement lost by Jeffrey Gallegor in the initial surgery.

informed consent.[2] The lower court refused to do so because allegations to support recovery on the theory of lack of informed consent were not pleaded by the Appellants. It is clear that the Appellants' Complaint in this case only sought recovery based upon claims of negligence by the Appellees. Recovery under the theory of informed consent has a different basis, being derived from the concept of technical assault, and may be permitted even in an absence of negligence by the hospital or physician. *Cooper v. Roberts,* 220 Pa.Super. 260, 286 A.2d 647 (1971). Because the Appellants failed to assert such matters in their Complaint, we reject the claim that the lower court erred in not permitting the Appellants' case to be decided by the jury on the informed consent theory of recovery.

 Appellants next argue that the lower court erred in refusing to permit them to introduce into evidence portions of the operative reports of the surgery performed on Jeffrey on October 13, 1976. However, the record reveals that the reports were read to the jury with only the dates of their preparation deleted. The lower court determined that while the content of the reports was relevant, being the description of what took place during the operation, the dates on which the reports were prepared had no bearing on the issue of negligence. It is axiomatic that questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court, whose decision will not be disturbed absent a clear abuse of that discretion. Moreover, it is the trial court's function to exclude evidence which would confuse the jury and divert their attention from the primary issues in a case. *Feld v. Merriam,* 314 Pa.Super. 414, 461 A.2d 225 (1983). We find that the lower court did not abuse its discretion by refusing to admit the operative reports into evidence, especially in view of the fact that their contents were read to the jury.

 Last, the Appellants argue that the lower court erred in refusing to permit the Appellants to introduce

2. Where a patient is mentally and physically able to consult about his condition, his informed consent is ordinarily a prerequisite to surgery by his physician. *Gray v. Grunnagle,* 423 Pa. 144, 223 A.2d 663 (1966).

portions of the deposition testimony of Jeffrey's treating physicians into evidence during the trial. The record shows that prior to trial, the court had entered the following handwritten order in response to a defense motion, pursuant to Pennsylvania Rule of Civil Procedure 4003.5:

### Order of Court

Plfs. shall by October 1, 1981 file and furnish defs. with expert reports for any expert witnesses whom they intend to call at trial. The Oct. 1, 1981 time may be extended only for good cause shown by motion filed prior to 10/1/81. Plfs. are be precluded from introducing as part of their case any expert testimony for which reports were not timely filed. [sic]

The lower court determined that the Appellants did not comply with this order nor apply for an extension of time within which to file expert reports. This finding by the lower court is not challenged as incorrect by the Appellants. We find no abuse of discretion or other error by the trial judge in his ruling on this issue, and reject the Appellants' request for reversal based upon it. Compare *Gill v. McGraw Electric Co.*, 264 Pa.Super. 368, 399 A.2d 1095 (1979).

The Judgment of the lower court is hereby affirmed.