408 Pa. Superior Ct. 83 (1991)
596 A.2d 203
Fred and Lorraine LILLEY, Appellants,
v.
JOHNS-MANVILLE CORP., Pacor, Inc., Eagle-Picher Ind., Unarco Ind., Inc., Keene Corp., Raybestos Manhattan, Inc., Celotex Corp., Southern Textile Co., J.P. Stevens Co., Garlock, Inc., Owens-Illinois, Inc., Fibreboard Corp., GAF Corp.
Fred and Lorraine LILLEY
v.
JOHNS-MANVILLE CORP., Pacor, Inc., Eagle-Picher Ind., Unarco Industries, Inc., Keene Corp., Raybestos Manhattan, Inc., Celotex Corp., Southern Textile Co., J.P. Stevens Co., Garlock, Inc., Owens-Illinois Glass Co., Fibreboard Corp., GAF Corp.
Appeal of FIBREBOARD CORPORATION.
Fred and Lorraine LILLEY, h/w
v.
JOHNS-MANVILLE CORP., Pacor, Inc., Eagle-Picher Ind., Unarco Industries, Inc., Keene Corp., Raybestos Manhattan, Inc., Celotex Corp., Southern Textile Co., J.P. Stevens Co., Garlock, Inc., Owens-Illinois Glass Co., Fibreboard Corp., GAF Corp.
Appeal of FIBREBOARD CORPORATION.
Superior Court of Pennsylvania.
Argued March 19, 1991.
Filed August 22, 1991.
*88 Robert A. Nicholas, Philadelphia, for appellants (at 372) and for Lilley, appellees (at 373 & 374).
Steven J. Cooperstein, Philadelphia, for Fibreboard, appellant (at 373 & 374) and for Fibreboard, appellee (at 372).
Before CIRILLO, OLSZEWSKI and CERCONE, JJ.
CERCONE, Judge:
This is a consolidated appeal from a final judgment entered by the lower court in favor of Fred and Lorraine Lilley, plaintiffs below, who initiated the underlying action to recover damages from several manufacturers of asbestos and asbestos containing products. The complaint filed by the Lilleys alleged that between 1959 and 1976, Mr. Lilley's occupational duties brought him into daily contact with asbestos pipe insulation, asbestos packing material, and asbestos cement manufactured by the defendants. The Lilleys also alleged that as a result of his exposure to *89 asbestos while working for the Sun Ship Company (now the Penn Ship Company), Mr. Lilley suffered extensive asbestos-related injuries attributable to the defendant corporations. Additionally, Mrs. Lilley alleged loss of consortium stemming from Mr. Lilley's injuries.
The trial was "reverse bifurcated" in that the jury first determined that Mr. Lilley was entitled to two hundred fifty thousand dollars ($250,000) in compensatory damages and that Mrs. Lilley should receive an award of one hundred thousand dollars ($100,000) for her loss of consortium claim. The parties then litigated the question of liability before the same jury, which found in favor of the Lilleys. When the liability phase of the trial commenced, the other seven remaining defendants had entered into settlement agreements with Mr. and Mrs. Lilley which provided for the release of joint tortfeasors on a pro rata basis. Based on the jury's determination of liability, the lower court entered a verdict against Fibreboard Corporation for one-eighth of the damages awarded by the jury.
Fibreboard Corporation timely filed post-trial motions seeking to overturn both the damage award and the finding of liability. Mr. and Mrs. Lilley also filed a post-trial motion which alleged that the evidence insufficiently established Mr. Lilley's exposure to the products of Garlock, Inc. and Eagle-Picher Industries, two of the settling parties. This motion requested that Fibreboard Corporation be held responsible for one-sixth rather than one-eighth of the jury's award. Additionally, the Lilleys lodged a separate request for delay damages. Although the Honorable Lawrence parties denied the motions for post-trial relief of both parties on November 30, 1989, he nevertheless ordered Fibreboard Corporation to pay delay damages to Mr. and Mrs. Lilley, and molded the jury verdict to reflect this award. Fibreboard Corporation's proportionate share of the verdict, including the delay damages assessment, totalled seventy-seven thousand seventy-six dollars and three cents *90 ($77,076.03).[1] A judgment in that amount was subsequently entered in the lower court. For the reasons that follow, we affirm.
Fibreboard Corporation (hereinafter "Fibreboard" or "appellant") timely appealed to the Superior Court at Numbers 373 and 374, Philadelphia 1990 while Mr. and Mrs. Lilley (hereinafter "appellees") appealed at Number 372, Philadelphia 1990. Fibreboard filed its brief as the appellant on the consolidated appeals while the Lilleys prepared their brief as appellees/cross-appellants. Appellant has raised the following issues for our consideration: whether the lower court committed error of law in denying Fibreboard's motion for judgment non obstante veredicto and motion for a new trial due to: (1) appellees' failure to present competent medical evidence that exposure to Fibreboard's products was a substantial contributing factor to Mr. Lilley's asbestosis; (2) the lower court's refusal to charge the jury on the "de minimis" rule as it related to the "law of substantial contributing factor"; (3) permitting appellees' medical expert to testify that Mr. Lilley had a reasonable basis for a fear of cancer; (4) denying Fibreboard's motion in limine to preclude Mr. Lilley from telling the jury that he would be laid off from his job at the Pennsylvania Shipyard on May 1, 1989; and (5) awarding delay damages to appellees. In addition to presenting counter-statements of the questions raised by appellant, appellees have requested us to consider a sixth question: whether the lower court erred in denying their motion for a directed verdict on Fibreboard's cross-claims against defendants Garlock, Inc. and Eagle-Picher Industries. We shall address the parties' claims seriatim.
Appellant initially argues that it was an error of law for the lower court to refuse to grant judgment non obstante veredicto because the evidence adduced at trial was insufficient to sustain appellees' burden of proof regarding *91 the necessary elements of a products liability claim. We note that appellant's motion for post-trial relief correctly requested judgment n.o.v. as the motion contests the sufficiency of the evidence. Where the evidence is insufficient to sustain the verdict, the remedy granted in civil cases is a judgment notwithstanding the verdict. Butler v. Flo-Ron Vending Co., 383 Pa.Super. 633, 644 n. 6, 557 A.2d 730, 735 n. 6 (1989), allocatur denied, 523 Pa. 646, 567 A.2d 650 (1989). See also Solomon v. Baum, 126 Pa.Commw. 646, 652 n. 3, 560 A.2d 878, 881-82 n. 3 (1989), allocatur denied, 525 Pa. 636, 578 A.2d 930 (1990) (post-trial challenge to sufficiency of evidence provides no basis for new trial, but rather is a matter for judgment n.o.v.).
We agree with appellant that a judgment n.o.v. should be granted only in a clear case, and that all doubts should be resolved in favor of the verdict. Atkins v. Urban Redevelopment Authority of Pittsburgh, 489 Pa. 344, 351, 414 A.2d 100, 103 (1980). This court has clarified the standard of review applicable to the instant appeal by ruling that judgment n.o.v. is an extreme remedy which is properly entered by the trial court only where the facts are so clear that no two reasonable minds could fail to agree that the verdict was improper. Robertson v. Atlantic Richfield Petroleum Products Co., 371 Pa.Super. 49, 58, 537 A.2d 814, 819 (1987), allocatur denied, 520 Pa. 590, 551 A.2d 216 (1988). In this context, only the evidence which supports the verdict will be considered, and the court must give the verdict winner the benefit of all doubt and of every fact and inference deducible from the evidence. Id., 371 Pa.Superior Ct. at 58-59, 537 A.2d at 819. Accord Atkins v. Urban Redevelopment Authority, supra. Judgment n.o.v. should not be entered in a case where the evidence is conflicting upon a material fact. Northwest Savings Association v. Distler, 354 Pa.Super. 187, 191, 511 A.2d 824, 825 (1986); Olson v. Dietz, 347 Pa.Super. 1, 500 A.2d 125 (1985). Applying these standards, we find that appellees met their *92 burden of proving liability on the part of appellant Fibreboard.
The essence of appellant's argument is that appellees failed to demonstrate by competent medical testimony that Mr. Lilley inhaled asbestos fibers and that their source was a product manufactured by Fibreboard.[2] We agree with appellant that in order for liability to attach in a products liability action, a plaintiff must establish that his or her injuries were caused by a particular product of a defendant manufacturer or supplier. Eckenrod v. GAF Corp., 375 Pa.Super. 187, 190-91, 544 A.2d 50, 52 (1988), allocatur denied, 520 Pa. 605, 553 A.2d 968 (1988). As this pertains to an asbestos case, the plaintiff must demonstrate that he inhaled asbestos fibers shed by the specific product of the defendant. Id., 375 Pa.Superior Ct. at 191, 544 A.2d at 52. To this end, the plaintiff must prove that he worked in the vicinity of that product's use. Id. However, contrary to appellant's interpretation of that case, Eckenrod sets forth no requirement that causation be established solely by expert medical testimony.
It should be unnecessary for us to explain that the nexus between a specific asbestos product and a plaintiff's medical condition may be supplied by a variety of direct and circumstantial evidence which must necessarily include, but is not limited to, competent medical testimony. The testimony of any witness with knowledge regarding the plaintiff's work place and his or her exposure to a defendant's asbestos-containing products is admissible where probative. See, e.g., Samarin v. GAF Corp., 391 Pa.Super. 340, 348, 571 A.2d 398, 402-03 (1989), allocatur denied, 524 Pa. 629, *93 574 A.2d 71 (1990). We see no reason why a plaintiff should be excluded from testifying regarding asbestic products used either by himself or by his co-workers in or about the work place.[3]See also Taylor v. Celotex Corp., 393 Pa.Super. 566, 574 A.2d 1084 (1990) (in applying New Jersey law, Pennsylvania Superior Court concluded that although worker was unable to identify any of the products manufactured by the defendants, testimony of co-workers was admissible to establish that he had worked in close proximity to the products). Accord Richards v. Raymark Industries, 660 F.Supp. 599 (E.D.Pa.1987).
At trial, Mr. Lilley testified about the conditions under which he worked during his employment at Sun Ship. He explained his duties, first as a pipefitter, then as supervisor, assistant foreman, and finally as superintendent. His testimony included the facts that he and his co-workers labored in tightly confined areas utilizing asbestine products as pipe coverings, steam drum covers, and turbine casings as well as in the form of asbestos cement mortar. Mr. Lilley stated that he spent 90% of his working life from 1959 to 1976 under these conditions and that at the end of the work day, his clothes and body were so covered with asbestos fibers that he had to use an air line to blow away the asbestic dust. N.T. 4/17/89 at 45-53; 69-73; 79-81. Mr. Lilley also identified the following product and/or manufacturer names as being listed on the labels of products he and his co-workers used at Sun Ship: Unibestos, Caltemp, Careytemp, Kaylo, Manville, Portasite, Garlock and "Flexitali." N.T. 4/19/89 at 27-45.
Mr. Lilley's testimony was corroborated by that of a co-worker, Mr. Samuel Wasson, who identified Pabco, Kaylo, Unibestos, Raybestos, Amosite, and Caltemp as well as Superpowerhouse, Keene Products, Inc., Careytemp, Porter Amosite, Garlock asbestos gaskets, Calcil (or Calcilite) and *94 Hy-Temp as names he remembered seeing on products in the vicinity in which Mr. Lilley worked. N.T. 4/19/89 at 63-74. Evidence was also presented to the jury that during the pertinent time, Fibreboard manufactured and sold asbestos products under the trade name "Pabco," containing at various intervals, chrysotile asbestos, mixtures of chrysotile and amosite, and amosite asbestos. Id. at 75. This evidence additionally identified a Fibreboard product called Caltemp, originally Caltherm, which contained both calcium silicate and asbestos.
Regarding Mr. Lilley's medical condition, Dr. Stanley L. Altschuler, a board certified specialist in internal medicine and pulmonary disease, explained the physical qualities of asbestos and the effect on human physiology of inhaling asbestos dust from products commonly used in shipyards. Basing his conclusion on a complete physical examination including a pulmonary function study and chest X-Rays, Dr. Altschuler stated unequivocally that Mr. Lilley suffered from asbestosis. N.T. 4/17/89 at 5-32; 70-71. Dr. Altschuler also stated that to a reasonable degree of medical certainty, the physical abnormalities present in Mr. Lilley resulted from asbestos inhalation and that even one day's worth of such inhalation constituted a "substantial contributing factor" to his condition.[4]Id. at 32; 40.
Mindful of the applicable scope of review outlined above, we conclude that this evidence, when viewed in the light most favorable to appellees, was sufficient to permit the jury to infer that Mr. Lilley contracted a disease caused by breathing, in his work place, asbestos fibers from products manufactured by appellant. The testimony adduced at trial established that Mr. Lilley had contracted asbestosis, a disease caused only by the inhalation of asbestos fibers. Witnesses testified that Mr. Lilley worked in close quarters, that asbestos dust was omnipresent in this area, and that Caltemp (Caltherm) and other asbestos products carrying the "Pabco" trade name manufactured by Fibreboard were used by Sun Ship Company during the pertinent timeframe. *95 We perceive no basis on which the lower court could have granted judgment n.o.v., and therefore affirm on this issue.
Appellant next argues that it was an error of law for the lower court to refuse to charge the jury on the "de minimis" rule as it related to the "law of substantial contributing factor." The thrust of this argument is that the instruction actually given failed to emphasize that each manufacturer's liability must be separately evaluated. Thus, appellant contends that the trial court allowed the jury to attach liability simply upon proof that Mr. Lilley may have been minimally exposed to products sold by appellant. Appellant further argues that the lower court's refusal to define the phrase "substantial contributing factor" and to charge regarding de minimis effect was error because it confused the jury as to the level of exposure necessary to support a finding that a particular product was a "substantial contributing factor" to Mr. Lilley's injuries.
When assessing the denial of a motion for a new trial, the Superior Court will reverse only where the lower court has clearly and palpably abused its discretion or committed an error of law which controlled the outcome of the case. Sweitzer v. Dempster Systems, 372 Pa.Super. 449, 453, 539 A.2d 880, 881-82 (1988). Where a motion for new trial is based on an allegedly erroneous jury charge, we must examine the charge against the background of the evidence. Id. Even if the charge is in error, a new trial will be awarded only where the jury instruction might have prejudiced the appellant. Id. Our law is clear that the primary duty of a trial judge in charging a jury is to clarify the issues so that the jury may comprehend the questions they are to decide. Rivera v. Philadelphia Theological Seminary, 398 Pa.Super. 264, 269, 580 A.2d 1341, 1344 (1990), quoting Brandimarti v. Caterpillar Tractor Co., 364 Pa.Super. 26, 29, 527 A.2d 134, 136, allocatur denied, 517 Pa. 629, 539 A.2d 810 (1987). So long as the trial judge chooses a form of expression which adequately and clearly covers the subject, he or she is not required to use the exact language of a requested point. Id.
*96 As explained above, in order for liability to attach in a products liability action, a plaintiff must establish that his or her injuries were caused by a particular product of a defendant manufacturer. Eckenrod v. GAF Corp., 375 Pa.Super. at 190-91, 544 A.2d at 52. For an asbestos case, this means that the plaintiff must demonstrate that he worked in the vicinity of a particular product's use and that he inhaled asbestos fibers shed by that product. Id. In the instant case, the lower court charged the jury as follows:
In order for the plaintiff to recover in this case, the defendant's conduct must have been a legal cause of the accident. The defendant's conduct is the legal cause of the accident or injury or harm whenever it appears that that defect was a substantial factor in bringing about the harm.
In order for liability to attach to a particular defendant, in this kind of products case, the plaintiff must prove that the injuries he sustained were caused by the products of that manufacturer's supplier. To carry that burden of proof, the plaintiff must present evidence which establishes that he inhaled asbestos fibers which came from that manufacture's [sic] product. It is not enough simply to show that the product was delivered to the work place. He must show that he actually worked in the vicinity of the product and that he inhaled asbestos fibers from that product and in that connection, again, you consider the testimony of Mr. Lilley, the testimony of Mr. Wasson, testimony of what products were delivered to the boiler rooms and engine rooms of the ship, Mr. Wasson's testimony that sometimes it looked like a little snowstorm in there and he testified as to what happened to the products when you broke them open and put them on the pipes and then you hammer them.
You consider all of that testimony in making up your mind was the product defective because of failure to warn and was that defect if you find it present, a substantial factor in causing harm to Mr. Lilley.

*97 Remember, there may be several substantial factors. There are no requirements there be a single substantial factor. As long as you find that there is a real factor that's not something fanciful or something imaginary, but something that came about because of what happened. Then you will be finding it's a substantial factor.
How do you make those determinations? You do it in the same way you determine the damages issue. You do it by careful consideration of the evidence in the case. The evidence you are considering on this is the evidence that you have heard today. You consider the evidence you heard prior in the case also as part of the judgment of whether there is a defect and so forth.
N.T. 4/19/89 at 125-127. We conclude that the above jury charge adequately comports with the mandate of Eckenrod, supra and that the trial court was not required to provide any more precise explanation than that actually given.
Appellant has conceded the correctness of this determination by stating, "The above charge satisfies [sic] the rule espoused in Eckenrod [v. GAF Corp., supra] which requires that the jury be instructed that in order for liability to attach, a plaintiff must prove that he or she inhaled asbestos fibers shed by the particular named manufacturer's product." Appellant's brief at 20. Nevertheless, appellant contends that the lower court's charge must be viewed as inadequate when interpreted in the context of appellee's failure to show that Mr. Lilley was exposed to appellant's products and that they constituted a "substantial contributing factor" to his illness. We disagree with this assertion for two reasons.
First, we are unaware of any requirement of Pennsylvania law that the jury charge must include an instruction on de minimis exposure. Nor it appears, has appellant's research uncovered such precedent in Pennsylvania. Instead, appellant has provided an interesting and instructive analysis of Maryland law as interpreted by the Fourth Circuit in Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156 (4th Cir.1986). We are, however, not controlled *98 by Lohrmann. Absent a ruling on a particular question by the United States Supreme Court, the decision of a federal intermediate appellate panel is not binding on Pennsylvania courts. Cianfrani v. Johns-Manville Corp., 334 Pa.Super. 1, 6, 482 A.2d 1049, 1051 (1984). Pennsylvania courts are not bound by the decisions of inferior federal courts even where the case specifically concerns Pennsylvania law. See, e.g., Rader v. Pennsylvania Turnpike Commission, 407 Pa. 609, 182 A.2d 199 (1962); Commonwealth v. Lacey, 344 Pa.Super. 576, 496 A.2d 1256 (1985). As we have already determined, the lower court correctly applied the law of this Commonwealth when charging the jury. See Smith v. Brooks, 394 Pa.Super. 327, 575 A.2d 926 (1990) (trial judge may properly refuse a litigant's requested instruction where the substance thereof has been adequately covered).
Second, appellant's argument focuses on the insufficiency claim which we have already determined to be meritless. The jury was entitled to give credence to the testimony of Mr. Lilley, Mr. Wasson and Dr. Altschuler, which we have already discussed in detail. When viewed in toto, this testimony established that Mr. Lilley had worked in confined quarters with asbestos products, that at least some of the asbestos products used by Sun Ship were manufactured by appellant, that Mr. Lilley suffered from a disease caused by inhaling asbestos fibers and that even one day's exposure to asbestos dust constituted a "substantial contributing factor" to Mr. Lilley's asbestosis. In light of the foregoing, we find no indication that the lower court has committed clear and palpable abuse of discretion nor that the jury instruction was in error under Pennsylvania law. Therefore, appellant is not entitled to relief on this claim.
Next, appellant contends that a new trial is in order because the lower court erred in denying its motion in limine to preclude Mr. Lilley from telling the jury that he was soon to be laid off from his job at the Pennsylvania Shipyard. Appellant argues that this testimony created sympathy in the minds of the jury and was irrelevant to the *99 issues being tried. It is axiomatic that questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court. Gallegor by Gallegor v. Felder, 329 Pa.Super. 204, 211, 478 A.2d 34, 38 (1984). In reviewing a trial court's admission of testimony, the Superior Court will reverse only if there has been an abuse of discretion or error of law. Smith v. Brooks, 394 Pa.Super. at 336, 575 A.2d at 930. Evidence is relevant and therefore admissible where it tends to establish facts in issue or in some degree to advance the inquiry at hand. Scullion v. EMECO Industries, Inc., 398 Pa.Super. 294, 301, 580 A.2d 1356, 1360 (1990). We have carefully scrutinized the trial transcript and find that appellant is incorrect in contending that the testimony in question was irrelevant.[5] Clearly it was quite relevant to Mr. Lilley's claim for loss of earning capacity. We do not find it dispositive that, for reasons entirely unconnected to the question before the panel, the trial court later precluded appellees from pursuing their loss of earning capacity claim. The testimony was relevant to the case at the time it was given. As we find no indication that the court has committed an abuse of discretion, we affirm on this issue.
Appellant also objects to the admission of testimony by Dr. Altschuler to the effect that, to a reasonable degree of medical certainty, Mr. Lilley could harbor a fear of cancer in response to his exposure to asbestos. Our scope of review remains the same for this issue as for the previous evidentiary claim: we will reverse only if the trial court has committed abuse of discretion or error of law. Smith v. Brooks, supra. Our inspection of the record has convinced us that the trial court committed neither type of error in admitting this testimony. Rather, we find that appellant has mischaracterized the nature of Dr. Altschuler's testimony, the purpose for which it was elicited and the competence of the witness.
*100 As appellees correctly argue, part of the basis on which they sought damages from appellant stemmed both from Mr. Lilley's increased risk of lung cancer and mesothelioma and from his subjective fear of contracting cancer. Mr. Lilley testified in detail regarding his anxieties in this regard. N.T. 4/17/89 at 58-66. In order to sustain their burden of proving that such emotions could have some foundation in reason, counsel for appellees questioned Dr. Altschuler whether there was a "reasonable medical basis" for such fears.
Q. Doctor, I want you to assume that Mr. Lilley is afraid he is going to get cancer in his chest as a result of his exposure to asbestos.
Do you have an opinion to a reasonable degree of medical certainty as to whether there is a reasonable medical basis for such fear on behalf of Mr. Lilley?
A. Yes.
N.T. 4/17/89 (Vol. 2) at 41. While this question may not have been phrased precisely as Fibreboard would have preferred, it did not lead Dr. Altschuler to actually testify on any ultimate issue more properly left to the jury. Dr. Altschuler's subsequent testimony neither usurped any jury function nor crossed into the area of psychological speculation. The ensuing testimony simply explained, in epidemiological terms, the nature and quality of the increased cancer risks borne by asbestosis sufferers in general and specifically by a person with Mr. Lilley's type of symptoms. Id. at 41-46. Dr. Altschuler offered no testimony regarding Mr. Lilley's psychological profile nor the general psychological characteristics of asbestosis patients.
Appellant also objects to this testimony as beyond the range of Dr. Altschuler's expertise. We agree with appellees that this contention is frivolous. Dr. Altschuler established that he is a board certified specialist in internal medicine and pulmonary disease responsible for teaching medical students about lung diseases, and that he had taken courses in epidemiology. Id. at 6-13. We have carefully reviewed the entirety of Dr. Altschuler's testimony *101 regarding Mr. Lilley's physical condition and statistical studies regarding cancer risks for a person in his position. Id. at 5-71. We find no indication that this testimony as transcribed went beyond the expertise of a specialist in lung disease who had taken special courses in epidemiology. Finding no error of law or abuse of discretion in the trial court's evidentiary ruling, we affirm on this issue.[6]
The final question raised by appellant is whether the lower court committed an error of law in awarding delay damages to appellees. The thrust of this contention is that Pa.R.C.P. No. 238, 42 Pa.C.S.A. unfairly and unconstitutionally punishes Fibreboard for exercising its right to due process. Appellant's objections are twofold: (1) any award of delay damages is unconstitutional without a finding that the defendant is at fault for the delay; and (2) delay damages are inapplicable to that portion of the jury's award attributable to Mr. Lilley's future injuries. Neither contention has merit.
As an initial matter, it appears that appellant's constitutionality claim has been waived because the record certified on appeal does not indicate that Fibreboard has raised this issue with the lower court or given written notice of its challenge to the Court Administrator of Pennsylvania as required by Pa.R.A.P., Rules 521 and 522, 42 Pa.C.S.A. See Jistarri v. Fentress, 390 Pa.Super. 209, 216, 568 A.2d 618, 622 (1989), allocatur denied, 525 Pa. 634, 635, *102 578 A.2d 929 (1990). See also Havelka v. Sheraskey, 295 Pa.Super. 326, 441 A.2d 1255 (1982) (challenge to previous formulation of Rule 238 was waived on appeal where issue was not raised before trial court and no notification was given to court administrator). Were we to consider these claims on their merits, however, we note that in Dietrich v. J.I. Case Co., 390 Pa.Super. 475, 568 A.2d 1272 (1990), a panel of this court rejected both of the theories promulgated by Fibreboard. The majority in Dietrich affirmed the lower court's grant of delay damages for future injuries holding that Rule 238 is neither unconstitutional absent a finding of fault on the part of the defendant nor inapplicable to future injuries. Moreover, as Dietrich also states, it would be inappropriate for this court to find a rule promulgated by our supreme court to be constitutionally infirm. Id., 390 Pa.Superior Ct. at 490, 568 A.2d at 1279-80. Any such determination must emanate from the Pennsylvania Supreme Court itself. Id. See Novelli v. Johns-Manville Corp., 395 Pa.Super. 144, 149 n. 6, 576 A.2d 1085, 1088 n. 6 (1990) (endorsing majority ruling in Dietrich).
Recently, in Schrock v. Albert Einstein Medical Center et al., 527 Pa. 191, 589 A.2d 1103 (1991), the Pennsylvania Supreme Court had occasion to consider the current formulation of Rule 238. The court found that the medical center had waived its claim regarding the constitutionality of that rule. However, speaking for the majority, Justice Larsen specifically stated that revised Rule 238 was drafted in compliance with the spirit of Craig v. Magee Memorial Rehabilitation Center, 512 Pa. 60, 515 A.2d 1350 (1986). Schrock, supra, 527 Pa. at ___ n. 1, 589 A.2d at 1104-05 n. 1. Further, the court explicitly rejected the medical center's contention that no delay damages can be awarded where a defendant is free from fault in the delay of trial. Id., 527 Pa. at ___, 589 A.2d at 1106. As Justice Larsen explained, "Defendants can readily protect themselves from the assessment of delay damages by making a prompt settlement offer in writing that bears a substantial relationship to the actual damages in the case." Id., 527 Pa. at *103 ___, 589 A.2d at 1106. At a minimum, we believe these pronouncements must be interpreted as indications that our supreme court views revised Rule 238 as constitutionally orthodox. In light of the foregoing, we can grant appellant no relief on this claim.
Finally, appellees question whether the lower court erred in failing to grant their motion for a directed verdict on Fibreboard's cross-claims against co-defendant corporations Garlock, Inc. and Eagle-Picher Industries. Appellees contend that the evidence presented was insufficient to support any inference that products manufactured by these two defendants could have contributed to Mr. Lilley's medical condition. As a result, appellees argue that the question of the liability of these corporations should, as a matter of law, never have been presented to the jury. We disagree.
A motion for a directed verdict admits as true all facts and proper inferences from testimony which tend to support the opposing party's case, and rejects all testimony and inferences to the contrary. Morton v. Borough of Ambridge, 375 Pa. 630, 633, 101 A.2d 661, 662 (1954). Such a motion can properly be granted by a court only if the facts are clear and free from doubt. Person v. C.R. Baxter Realty Co., 340 Pa.Super. 537, 540, 490 A.2d 910, 911 (1985). On a motion for directed verdict, the trial court must consider the facts in the light most favorable to the party against whom the motion is being made. Cooke v. Travelers Insurance Co., 350 Pa.Super. 467, 471, 504 A.2d 935, 936 (1986). It is not within the province of the trial court to weigh conflicting evidence when ruling upon a motion for directed verdict as credibility is a jury question. Person v. C.R. Baxter Realty Co., supra, 340 Pa.Superior Ct. at 541 n. 2, 490 A.2d at 912 n. 2.
Considered in the light most favorable to Fibreboard, the evidence admitted at trial shows that Mr. Lilley specifically claimed to have utilized asbestic gaskets manufactured by Garlock. He also testified that he breathed dust from the asbestos containing products he used while *104 working for Sun Ship Company. He never in any way implied that Garlock's products failed to shed asbestos fibers while he was working with them. Insofar as the asbestos containing products manufactured by Eagle-Picher are concerned, a deposition taken from Jim Cardella and admitted into evidence at trial, explained that Mr. Cardella worked with these products in close proximity to Mr. Wasson while at Sun Ship Company. Mr. Wasson's testimony included an averment that he worked on a daily basis in the vicinity of both Mr. Cardella and Mr. Lilley. Taken in conjunction, this testimony supports the inference that Mr. Lilley worked in close proximity to the location at which Mr. Cardella used Eagle-Picher asbestic products. Viewing the totality of this evidence in light of the above standards, we conclude that it was sufficient to take the question of liability to the jury. Thus, the lower court was correct in refusing to grant a directed verdict against Fibreboard, the non-moving party.
The judgment of the lower court is affirmed.
CIRILLO, J., files a concurring statement.
OLSZEWSKI, J., files a concurring opinion.
CIRILLO, Judge, concurring:
Although I concur in the result reached by the majority in affirming the orders of the trial court, I write separately to once again express my disagreement with the assessment of Rule 238 delay damages against a defendant to whom fault for the delay in payment may not be attributed. See Pa.R.C.P. 238.
Revised Rule 238 permits delay damages to be assessed against a defendant if the verdict ultimately awarded to the plaintiff exceeds 125 percent of the amount offered in settlement to the plaintiff by the defendant. Pa.R.C.P. 238(b).
Rule 238 was created with the goal of fostering early settlements so as to "alleviate delay in the disposition of cases, thereby lessening congestion in the courts." Laudenberger *105 v. Port Authority of Allegheny County, 496 Pa. 52, 59, 436 A.2d 147, 151 (1981). Thus, the Rule is intended to encourage "reasonable written settlement offer[s] in a timely fashion." Id.
While this is indeed a laudable goal, there exists a fatal flaw in this process. The application of Rule 238 results in penalizing defendants merely for exercising their right to due process of the law. See Dietrich et al. v. J.I. Case Co. et al., 390 Pa.Super. 475, 568 A.2d 1272 (1990) (Cirillo, P.J., concurring and dissenting); Schrock v. Albert Einstein Medical Center, 386 Pa.Super. 215, 562 A.2d 875 (1989) (Cirillo, P.J., dissenting), alloc. granted, 525 Pa. 619, 577 A.2d 891 (1990); Ceresini v. Valley View Trailer Park, 380 Pa.Super. 416, 552 A.2d 258 (1988) (en banc) (Cirillo, P.J., dissenting); see also Tindal v. Southeastern Pennsylvania Transportation Authority, 385 Pa.Super. 94, 560 A.2d 183 (1989) (en banc) (Cirillo, P.J., concurring and dissenting); Snelsire v. Moxon, 384 Pa.Super. 85, 557 A.2d 785 (1989) (en banc) (Cirillo, P.J. concurring); King v. Southeastern Pennsylvania Transportation Authority, 383 Pa.Super. 420, 557 A.2d 11 (1989) (en banc) (Cirillo, P.J., dissenting); Miller v. Wise Business Forms, Inc., 381 Pa.Super. 236, 553 A.2d 443 (1989) (en banc) (Cirillo, P.J., dissenting).
The Supreme Court of Pennsylvania has held that the assessment of Rule 238 delay damages is constitutional. See Laudenberger v. Port Auth. of Allegheny Co., 496 Pa. 52, 436 A.2d 147 (1981). However, since Laudenberger the rule has undergone much criticism and has not escaped unscathed. See, e.g., Craig v. MaGee Mem. Rehabilitation Center, 512 Pa. 60, 515 A.2d 1350 (1986).
In Craig, the Supreme Court recognized that the system of assessing delay damages created by operation of Rule 238 could not pass constitutional muster. Justice McDermott, writing for the majority, recognized that:
"[E]xperience shows that the ends sought [by Rule 238] run too tight a gauntlet through Due Process, by denial of a forum to assess fault for the delay sought to be avoided. In short, Rule 238 has become an uncontestable *106 presumption that all fault lies with a defendant. There are too many reasons why such is not always the case...."
Craig, 512 Pa. at 65, 515 A.2d at 1353.
Concerned with this "uncontestable presumption of fault" our Supreme Court suspended operation of the provisions of Rule 238 which assessed delay damages against a defendant without regard for fault. Id. The court further directed that all claims for delay damages must thereafter be made by petition to the judge who presided over the trial or by a panel of arbitrators, depending upon the route taken by the parties in resolving the dispute. Id.
Following the court's holding in Craig, the Civil Procedure Rules Committee revised Rule 238 to exclude damages for the period of time:
(1) after which the defendant has made a written offer of
(i) settlement in a specified sum with prompt cash payment to the plaintiff, or
(ii) a structured settlement underwritten by a financially responsible entity,
and continued that offer in effect for at least ninety days or until commencement of trial, whichever first occurs, which offer was not accepted and the plaintiff did not recover by award, verdict or decision, exclusive of damages for delay, more than 125 percent of either the specified sum or the actual cost of the structured settlement plus any cash cost to the plaintiff; or
(2) during which the plaintiff caused the delay of the trial.
Pa.R.C.P. 238(b).
Thus, the revised Rule 238 requires that the trial judge make a determination of entitlement to and amount of delay damages, taking into account (1) whether the requisite offer of settlement has been made and (2) whether the plaintiff was responsible for the specified periods of time during which the trial was delayed. Pa.R.C.P. 238, Explanatory Comment-1988.
*107 However, revised Rule 238 has not completely alleviated the presumption of fault against the defendant. Damages may still be assessed against the defendant for that period of time which is not attributable to the plaintiff even though such delay is not directly attributable to the actions of the defendant. It is axiomatic that assessing liability without fault is contrary to the mandate of the due process clause of the United States Constitution and penalizes one for seeking out his constitutionally guaranteed right to a trial.
For this reason, I respectfully concur.
OLSZEWSKI, Judge, concurring.
I agree with the majority's ruling affirming each of the trial court's orders. I write separately to further address appellant's contention that the trial court's failure to instruct the jury on a de minimis contact  relating to the law of substantial contributing factor  requires a new trial.
Under the circumstances of this case, as the majority explains, the trial court's refusal to give appellant's requested charge was not an error of law which could have been responsible for the verdict. Therefore, appellant's motion for a new trial was properly denied. Smith v. Brooks, 394 Pa.Super. 327, 575 A.2d 926 (1990). Nevertheless, to remain faithful to the law of substantial contributing factor and to ensure that juries understand exactly what it involves, in future cases, where a defendant manufacturer presents evidence that a plaintiff's exposure to its product was so minimal that it could not have caused or could not have combined with other defective products to have caused that plaintiff's injuries, I am prepared to hold that a de minimis instruction, if requested, should be given.
As the majority opinion points out, for liability to attach in a products liability action, a plaintiff must establish that his or her injuries were caused by a particular product of a defendant manufacturer. Eckenrod v. GAF Corp., 375 Pa.Super. 187, 190-91, 544 A.2d 50, 52 (1988). To prove *108 that a particular product caused a harmful result, it must be shown that the defendant manufacturer's defective product was a substantial factor in producing plaintiff's injuries. Sheehan v. Cincinnati Shaper Co., 382 Pa.Super. 579, 555 A.2d 1352 (1989), appeal denied, 523 Pa. 633, 564 A.2d 1261. If the defective product is not a substantial factor in producing plaintiff's injuries, then that product is not the legal or proximate cause of those injuries and liability will not lie. Cf. Whitner v. Lojeski, 437 Pa. 448, 263 A.2d 889 (1970).
Relying on the above principles, appellant requested that the jury be charged as follows:
If you are not satisfied, more probably than not, the plaintiff had nothing more than a purely incidental contact with the asbestos product of a particular defendant, then the absence of a warning on the defendant's product could not have been a substantial factor in bringing about plaintiff's injury, and hence that defendant could not be liable to that plaintiff.
(R. 132a.) Appellant was not entitled to have this instruction given since it misstates the law. Minimal, or incidental, contact is a substantial contributing factor in causing a harmful result if that contact produced or substantially contributed to producing such a result. Consequently, proving that exposure to a particular defendant's product may have been minimal does not necessarily lead to the conclusion that it could not have been a substantial contributing factor to plaintiff's injuries.
A defective product substantially contributes to a plaintiff's injuries if it is sufficient to cause them or when combined with other contributing factors is sufficient to cause them, even though each alone would have been insufficient. A defendant will not be permitted to avoid responsibility for the injurious consequences of its defective product merely because a defective product of another would have independently caused the same result. The law on this type of substantial contributing factor is aptly set out in the Pennsylvania Suggested Standard Jury Instructions:

*109 When negligent conduct of two or more persons contributes concurrently to an occurrence or incident, each of these persons is fully responsible for the harm suffered by the plaintiff regardless of the relative extent to which each contributed to the harm. A cause is concurrent if it was operative at the moment of the incident, and acted with another cause as a substantial contributive factor in bringing about the harm.
Pa. SSJI Civ. 3.26 Concurring Causes (Subcommittee Draft 1978). While this section applies to the negligent conduct of two or more persons, its reasoning applies just as forcibly to the defective products of two or more manufacturers.
Conversely, if a defendant introduces competent evidence that exposure to its product was so minimal, incidental, insignificant, or insubstantial that it could not have produced or substantially contributed to having produced plaintiff's injuries, then the jury should be instructed, when a defendant so requests, that, if they are persuaded by that evidence, then such exposure constitutes a de minimis contact which cannot be considered a substantial contributing factor. Such a charge would eliminate any possible uncertainty over when exposure to a defendant's product was so minimal that it may not be found to have been a substantial contributing factor. A de minimis instruction, along the above lines, would reconcile the law of substantial contributing factor with the law of concurrent causes.
On the issue of delay damages and the constitutionality of Rule 238, we are, of course, duty bound to follow the dictates of our Supreme Court. The Court has recently reaffirmed the validity of revised Rule 238, allowing the imposition of delay damages upon a defendant despite a lack of fault. Schrock v. Albert Einstein Medical Center et al., 527 Pa. 191, 589 A.2d 1103 (1991).
For the preceding reasons, I respectfully concur.
NOTES
[1] The lower court signed two separate orders on November 30, 1989. The order granting delay damages and denying the Lilleys' post-trial motions was docketed on December 12, 1989. However, the order molding the verdict and requiring Fibreboard to pay the sum of $77,076.03 was not docketed until January 2, 1990.
[2] Appellant's brief states that appellees were required to prove three elements in order to sustain their burden of proof: (1) that Mr. Lilley inhaled asbestos fibers shed by an asbestos product manufactured by Fibreboard; (2) that such exposure caused damages; and (3) that Fibreboard's products were "defective" within the meaning of § 402A of the Restatement (Second) Torts (1979). (Appellant's brief at 11.) Although appellant has presented complete arguments relating to appellees' failure to demonstrate the first and second elements, no such discussion has been provided regarding element three. Arguments not fully developed on appeal are deemed waived. See, e.g., Cosner v. United Penn Bank, 358 Pa.Super. 484, 493, 517 A.2d 1337, 1342 (1986). Accordingly, we will not consider whether appellees have met their burden of proof in this particular.
[3] For a general discussion of evidentiary questions in asbestos cases, see Annot., Products Liability: Necessity and Sufficiency of Identification of Defendant as Manufacturer or Seller of Product Alleged to Have Caused Injury, 51 A.L.R.3d 1344 (1973).
[4] The defense presented no expert testimony to refute this opinion.
[5] Appellant cites the legal maxim res inter alia acta [sic] to support its contention that the testimony should be deemed inadmissible. However, we do not consider syntactically incorrect Latin incantations to be an appropriate shorthand substitute for authentic legal reasoning.
[6] We are cognizant of appellant's contention that Dr. Altschuler's testimony went beyond the scope of a pre-trial report submitted to defense counsel on June 9, 1988. However, we are unable to address the merits of this argument because the evidence in question has not been made part of the record certified on appeal. An appellate court can only consider the certified record when reviewing a case. Barner v. Barner, 364 Pa.Super. 1, 9, 527 A.2d 122, 126 (1987). It makes no difference that the reproduced record submitted by appellant contains a purported copy of Dr. Altschuler's report because a reproduced record should not include documents which are not part of the certified record and we may not consider such material on appeal. Mid-Island Properties, Inc. v. Manis, 391 Pa.Super. 236, 239, 570 A.2d 1070, 1071-72 (1990). See also Dorn v. Stanhope Steel, Inc., 368 Pa.Super. 557, 563 n. 1, 534 A.2d 798, 801 n. 1 (1987), allocatur denied, 518 Pa. 656, 544 A.2d 1342 (1988) (paper may not be made a part of the record on appeal simply by reproducing it).