**Simonds v. Vill**

*Stephen J. Pokiniewski,* for plaintiffs.
*Fred B. Buck,* for defendants.

ABRAMSON, *J.,* September 28, 1998—

## I. PROCEDURAL HISTORY

Following a jury trial, which commenced on January 8, 1998, a unanimous verdict was entered against the plaintiffs. On January 23, 1998, plaintiffs filed a motion for post-trial relief requesting a new trial, saying the trial court had erroneously charged the jury on landowner liability for an unsafe sidewalk, had improperly excluded the testimony of City Inspector Philip Washington, and had improperly charged the jury on the doctrine of assumption of the risk. On July 20, 1998, the trial court denied plaintiffs' post-trial motions, and judgment was entered for the defendant. On August 18, 1998, plaintiffs appealed to the Superior Court.

## II. THE FACTS

This case arises from an accident that occurred on January 12, 1994. Plaintiff was walking from her place of employment to her car, via defendant Ethel Vill's sidewalk, when she slipped on mud in an alleged depression[1] in the sidewalk. Plaintiff had been crossing

---

1. Although it was represented by the plaintiffs' expert that the depression was created by missing bricks in a brick sidewalk (Tr. at 80 (January 9, 1998)) and plaintiffs' expert stated that the conditions at the time of the accident were unchanged at the time of trial (see final page of Mr. Pereira's expert report), a viewing of the sidewalk revealed that the "depression" consisted of a one-inch deflection of a solid brick sidewalk over a distance of four feet. There were, in fact, no missing bricks.

the same sidewalk area for approximately two years before this accident occurred. A jury trial was held on January 8, 1998. During the trial, the court permitted a jury view of the sidewalk. Subsequent to the jury view, the trial court excluded plaintiff's witness, Philip Washington, who was to be called to testify as to the defective condition of the sidewalk. The exclusion of this witness is the first subject of appeal. At the conclusion of the trial, the trial court charged the jury on the standard for landowner liability. The standard was identical to the language of Restatement (Second) of Torts §342 with the addition of this phrase: "If the person knows of it [the risk] or has reason to know of it, but nevertheless knowingly and voluntarily proceeds in the face of it, then the landowner has no liability." This addition to the jury charge is the second subject of this appeal. The trial judge also submitted a special interrogatory to the jury which asked: "Do you find that Anne Simonds voluntarily and knowingly proceeded in the face of an obvious and dangerous condition that she knew of or had reason to know of?" This special interrogatory is the third subject of this appeal.

## III. ANALYSIS

### A. *Standard of Review*

### 1. Motion for a New Trial

"When assessing the denial of a motion for a new trial, the Superior Court will reverse only where the lower court has clearly and palpably abused its discretion or committed an error of law which controlled the outcome of the case." *Lilley v. Johns-Manville Corp.,* 408 Pa. Super. 83, 95, 596 A.2d 203, 209 (1991).

## 2. Erroneous Jury Charge

Where the motion for a new trial is based on an allegedly erroneous jury charge, the charge must be examined against the background of the evidence. *Lilley,* 408 Pa. Super. at 95, 596 A.2d at 209. "Even if the charge is in error, a new trial will be awarded only where the jury instruction might have prejudiced the appellant." *Id.* "A trial court's charge to the jury will be upheld if it adequately and accurately reflects the law." *Giosa v. School District of Philadelphia,* 157 Pa. Commw. 489, 501, 630 A.2d 511, 517 (1993).

## 3. Exclusion of Witnesses

The decision to admit or exclude expert testimony is within the sound discretion of the trial court. *Christiansen v. Silfies,* 446 Pa. Super. 464, 475, 667 A.2d 396, 401 (1995) (Trial court's decision upheld where the exclusion of expert testimony was due to the availability of firsthand observations). The exclusion of expert testimony will not be reversed absent an abuse of discretion. *Id.*

## B. *Jury Charge and Special Interrogatory*

The elements of a prima facie case for negligence are well-settled. The plaintiff must establish: "the existence of a duty or obligation recognized by law; a failure on the part of the defendant to conform to that duty, or a breach thereof; a causal connection between the defendant's breach and the resulting injury; and actual loss or damage suffered by the complainant." *T.A. v. Allen,* 447 Pa. Super. 302, 306, 669 A.2d 360,

362 (1995). Where there is no duty of care, there can be no negligence.[2] *Id.*

In determining what the duty owed to the plaintiff should be, courts have frequently used the Restatement (Second) of Torts for guidance. In this case, it was not disputed that plaintiff was a licensee and that defendant was the landowner. The court therefore correctly applied the Restatement standard, which states that a landowner is liable for physical harm caused to the plaintiff by a condition on the landowner's property when:

"(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

"(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

"(c) the licensees do not know or have reason to know of the condition and the risk involved." Restatement (Second) of Torts §342.

This section of the Restatement was adopted by the Pennsylvania Supreme Court in *Sharp v. Luksa,* 440 Pa. 125, 269 A.2d 659 (1970).

In this case, the jury was instructed almost verbatim from section 342 of the Restatement with the addition of the following sentence: "If the person knows of it [the risk] or has reason to know of it, but nevertheless knowingly and voluntarily proceeds in the face of it,

---

2. The culpability of a plaintiff guilty of willful and wanton conduct is close to intentional wrongdoing. And while negligence and gross negligence can be compared, it simply cannot be said that intentional wrongdoing or a lesser included offense is some degree of negligence.

then the landowner has no liability." (Tr. at 103-104 (January 13, 1998).) It is this portion of the jury instruction as well as the related special interrogatory[3] which are being appealed.[4] Appellants argue that the jury was erroneously charged on the doctrine of assumption of the risk rather than on comparative negligence.

---

3. The special interrogatory asked: "Do you find that Anne Simonds voluntarily and knowingly proceeded in the face of an obvious and dangerous condition that she knew of or had reason to know of?" (Tr. at 131 (January 13, 1998).)

4. Both plaintiff and defendant objected to jury interrogatory no. 1. With respect to plaintiff, we learned the reason for her objection, to wit: that she believed it was in derogation of the comparative negligence statute. With respect to the defendant, we did not learn the reason for her objection. Indeed, given that she requested the jury be charged with the Restatement, if the objection was to any question other than those dealing with negligence concepts, then the objection would appear to this court to be inconsistent with the requested point for charge. Perhaps the defendant wanted the benefit of the Restatement to obtain a decision from the jury that either she was not negligent or that the plaintiff was more negligent than she. While this strategy would be most interesting, the court could not, having decided to charge the jury with the Restatement, disguise the third element of the Restatement dealing with duty as a negligence issue. Nor could it disguise the issue of whether the plaintiff's conduct was voluntary or inadvertent as a comparative negligence dispute. Most likely, then, the defendant believed that the court raised the standard of conduct above that required by the third element of the Restatement which militates against a landowner's duty. The plaintiff cannot capitalize on the fact that the defendant may have had an objection of this nature since the question posed thusly would have been to the plaintiff's benefit. It is then of no moment to this appeal that having asked that the jury be charged with the Restatement, the defendant objected to an interrogatory dealing with the applicability thereof. Plaintiffs' objection must stand or fall on its own.

The doctrine of assumption of the risk has been the subject of much dispute in this Commonwealth. This dispute is well-summarized in Justice Zappala's dissent in the seminal case of *Howell v. Clyde,* 533 Pa. 151, 620 A.2d 1107 (1993): "I dissent. Until such time as this court arrives at a clear-cut majority, we will continually muddy the waters in the sensitive areas of both comparative negligence and the assumption of risk, both of which are cornerstones of the negligence law in this Commonwealth." *Id.,* 533 Pa. at 166, 620 A.2d at 1115.

Although the case of *Howell v. Clyde* severely abrogated the doctrine of assumption of the risk as an affirmative defense, it did not abrogate assumption of the risk insofar as it lessened or eliminated the duty of the defendant toward the plaintiff. "[T]o say that the invitee assumed the risk of injury from a known and avoidable danger is simply another way of expressing the lack of any duty on the part of the possessor to protect the invitee against such dangers." *Howell,* 533 Pa. at 158, 620 A.2d at 1110. In essence, the *Howell* court stated that "a duty analysis may entail a consideration of assumption of risk and ordinary negligence principles." *Id.*

Plaintiffs argue that the affirmative defense of assumption of the risk should not have been a part of the jury charge. Plaintiffs' argument ignores the important distinction between assumption of the risk as an affirmative defense and assumption of the risk as part of the duty analysis in a prima facie negligence case. One need not reach the issue of an affirmative defense where a prima facie case has not been made out. In this case, plaintiff failed to make out a prima facie case for negligence by failing to prove that defendant owed her a duty. The reason that the defendant

did not owe the plaintiff a duty is that the jury found that plaintiff voluntarily and knowingly encountered an obvious and dangerous risk. Once the jury found that plaintiff voluntarily and knowingly encountered this risk, the trial court was constrained to find that defendant owed no duty to the plaintiff and to enter judgment against the plaintiff on that basis.

It would be utterly nonsensical to issue a comparative negligence instruction where the jury finds that the plaintiff voluntarily and knowingly encountered such a risk. Here, the jury heard the plaintiff admit that she had walked by the area hundreds of times in the two years before her accident and had even purposely avoided the area on the morning of her accident. (Tr. at 37-39 (January 9, 1998).) Plaintiff admitted that she "must have seen" the condition because she "walked past there twice a day." (Tr. at 68 (January 12, 1998).) Finally, plaintiff admitted that at the time of the accident, she stepped into the mud-filled depression without looking down before she stepped, even though she knew the depression was there and that it would have been visible to her had she looked at the ground. (Tr. at 40-41 (January 9, 1998); Tr. at 67-68 (January 12, 1998).) No explanation was offered for this conduct. (Tr. at 69-71 (January 12, 1998) [plaintiff's rebuttal evidence].) Where a person knows of a danger, chooses not to heed that danger, and voluntarily proceeds nonetheless, that person is no longer owed a duty by the landowner. If it were otherwise, plaintiffs could refuse to heed known dangers, thereby affording them handsome recoveries despite their volitional conduct. Pratfall plaintiffs would simply be deemed more or less negligent. This cannot be countenanced in the face of the reality that such events can occur by reason of intent and recklessness beyond gross negligence.

Appellants argue that the trial court was precluded from issuing an assumption of the risk instruction because the court denied a motion for nonsuit on the grounds of assumption of the risk. *Struble v. Valley Forge Military Academy,* 445 Pa. Super. 224, 232, 665 A.2d 4, 8 (1995). Although this is a correct statement of the law where assumption of the risk is being applied as an affirmative defense, it does not apply to assumption of the risk as it is used in a duty analysis. The affirmative defenses of assumption of the risk and comparative negligence are not even reached where a plaintiff's conduct relieves the defendant of its duty. Without a duty, there can be no negligence, and without a prima facie case for negligence, there is no need for an affirmative defense.

Finally, it should be noted that the jury charge announced by the trial court simply underlined what was already stated in the Restatement. Restatement (Second) of Torts §342 states three requirements in order to hold a landowner liable for physical harm caused by a condition on the land. If all three requirements are not met, there can be no landowner liability. The first requirement is that the landowner knows or has reason to know of the condition, should realize it involves an unreasonable risk of harm to people on the property, and should expect that they will not discover or realize the danger. The second requirement is that the landowner failed to exercise reasonable care to make the condition safe or to warn of the condition or risk. The third requirement of section 342 is that the plaintiff does not know or have reason to know of the condition and the risk involved. Simply put, when this third requirement is not met, the landowner cannot be held liable for the plaintiff's injury. To conclude that this third element of the Restatement is not required would render section 342 meaningless. Whether or not the plaintiff

knew of the condition and risk involved was a question of fact for the jury. Once the jury resolved this question of fact against the plaintiff, the trial court could not impose a duty upon the defendant and was constrained to enter judgment against the plaintiff.[5]

## C. *Jury Instruction Pertaining to Sidewalk Maintenance*

Appellants contend that the trial court did not properly instruct the jury regarding a property owner's duty to maintain his sidewalk in a safe condition as set forth in *Bromberg v. Gekoski,* 410 Pa. 320, 189 A.2d 176 (1963). In *Bromberg,* the court held that "[s]idewalks must be so maintained that they will not present an unreasonable risk of harm to pedestrians." *Id.,* 410 Pa. at 322, 189 A.2d at 177. The trial court is at a loss to understand of what appellants complain. On the issue of property owner liability for his sidewalk, the jury was instructed as follows: "One in possession of land is required to maintain abutting public sidewalks in a reasonable safe condition to prevent or eliminate any hazardous or unsafe condition which, upon all the circumstances involved, would constitute an unreasonable risk of harm to pedestrians properly using the walks." (Tr. at 108-109 (January 13, 1998).)

Appellants argue that because the Restatement adds an element that relieves the defendant of liability where

---

5. Any risk that such an analysis would allow judicial characterization to thwart the purpose of the comparative negligence system is ameliorated by allowing the jury to decide the issue. That is what occurred here. The jury had an opportunity to determine the nature of the conduct and then pass upon the issue of negligence and comparative negligence. Moreover, all interrogatories were listed on the same verdict slip and were reviewed with the jury prior to deliberations.

the plaintiff is aware of the dangerous condition, the trial court should have restricted itself to the *Bromberg* instruction instead. This result is not in keeping with the laws of our Commonwealth. In fact, cases subsequent to *Bromberg* have used both the specific sidewalk instruction and the Restatement instruction. *Peair v. Home Association of Enola Legion No. 751,* 287 Pa. Super. 400, 406, 430 A.2d 665, 668 (1981). Clearly, the two instructions are not mutually exclusive and are even complementary in establishing landowner liability.

### D. *Exclusion of the Testimony of Philip C. Washington*

In their motion for post-trial relief, appellants alleged that the trial court erred in excluding City Inspector Philip Washington from testifying. The decision to exclude expert testimony was within the sound discretion of the trial court. *Christiansen,* 446 Pa. Super. at 475, 667 A.2d at 401. In *Christiansen,* the court's decision to exclude the expert witness was upheld where the court's decision was based upon the availability of first-hand observations from eyewitnesses. *Id.* In the instant case, the jury was permitted to view the premises themselves. Plaintiff's expert was to testify as to the defective condition of the sidewalk, which testimony was no longer necessary once the jury was allowed to see the sidewalk for themselves.

Any testimony from Philip Washington would have been unduly cumulative given the fact that plaintiffs already had an expert on liability and causation, Julius Pereira A.I.A. Moreover, Philip Washington was never identified as an expert witness nor did he submit an expert witness report. As a fact witness, he would have been of limited utility to the jury's ultimate determi-

nation given the jury's view of the sidewalk and given Mr. Pereira's conclusion that the sidewalk had not changed condition from the time of the accident to the time of the trial.[6]

## IV. CONCLUSION

For the foregoing reasons, the appeal of Anne Simonds is without merit, and should be dismissed.

---

6. Mr. Pereira stated in his expert report: "It is evident from the photographs taken almost three years ago and from my most recent inspection in February of this year, that there has been no attempt to repair the damage and/or alleviate conditions that caused it [. . .]." (Taken from the final page of Mr. Pereira's expert report dated April 4, 1997.)